**SIERRA CLUB, Plaintiff,**

v.

**TRI–STATE GENERATION AND TRANS-MISSION ASSOCIATION, INC., Public Service Company of Colorado, Inc., Salt River Project Agricultural Improvement and Power District, PacifiCorp, and Platte River Power Authority, Defendants.**

Civil Action No. 96 N 2368.

United States District Court, D. Colorado.

Feb. 6, 1997.

Opinion Denying Reconsideration March 20, 1997.

John Barth, Boulder, CO, and Reed Zars, Laramie, WY, for plaintiff.

James W. Sanderson, Michael J. Norton, Friedlob Sanderson Raskin Paulson & Tourtillott, Denver, CO, and Howard A. Kenison, Doherty Rumble & Butler, Denver, CO, for defendants.

## ORDER AND MEMORANDUM OF DECISION

NOTTINGHAM, District Judge.

This is a citizen suit under the Clean Air Act, 42 U.S.C.A. §§ 7401–7671q (West 1995 & Supp.1996), and the Colorado Air Quality Control Act, Colo.Rev.Stat. §§ 25–7–101 to 25–7–1008 (1989 & Supp.1996) ("CAQC"). Plaintiff Sierra Club alleges that defendants' release of air pollutants violates the two acts and their implementing regulations. Plaintiff seeks declaratory judgment and injunctive relief The matter is before the court on defendants': (1) "Motion to Strike Pursuant to Rule 12(f), Fed.R.Civ.P." filed November 27, 1996; and (2) "Motion to Dismiss, or in the Alternative, for a Stay of This Action" filed December 2, 1996. Jurisdiction is based on 28 U.S.C.A. §§ 1331, 1367 (West 1993), 42 U.S.C.A. § 7604(a) (West 1995).

## FACTS

Plaintiff, a national conservation organization with approximately 600,000 members, alleges that defendants have illegally emitted air pollutants from the Craig Station, a coal-fired, electricity-generating facility in Moffat County, Colorado, into the Yampa Valley. (Compl. ¶¶ 1, 6–7 [filed Oct. 9, 1996].) As a result of the emissions, plaintiff claims, its members who live, work, and recreate in the Yampa Valley have suffered impaired abilities to (1) breathe clean air in the Yampa Valley and mountains surrounding the valley, including the Mount Zirkel Wilderness Area, and (2) view natural scenery and wildlife in the valley. (Id. ¶ 7.)

On May 5, 1993, via certified mail, plaintiff sent defendants notice of its intent to file a lawsuit against them for violations of the Clean Air Act. (Mot. to Dismiss, or in the Alternative, for a Stay of this Action, Ex. A [copy of notice] [filed Dec. 2, 1996] [hereinafter "Mot. to Dismiss"].) In its notice, plaintiff stated, inter alia:

> The suit will allege that the Craig Station in Moffat County, Colorado has been, and continues to be, in violation of the Clean Air Act by: (1) failing regularly to comply with the 20% opacity standard, (2) failing to comply with the $SO_2$ emission standard for unit # 3, (3) failing to operate air pollution control equipment in a manner consistent with good air pollution control practices to minimize emissions, and (4) failing to monitor continuously air emissions.

(Id.) Plaintiff further wrote, "These violations have persisted for at least the last five years." (Id.) Plaintiff alleges that, as required by the Clean Air Act, it also sent copies, via certified mail, to the Environ-

mental Protection Agency, the Colorado Department of Health, and the Governor of Colorado. (Compl. ¶ 3.) Plaintiff has provided copies of return receipts indicating that the Governor of Colorado, the EPA Regional Administrator, and the Colorado Department of Health received certain materials via certified mail on May 7, 1993, and the Administrator of the EPA received certain materials via certified mail on May 11, 1993. (Sierra Club's Resp. in Opp'n to Defs.' Mot. to Dismiss, Ex. A [copies of return receipts] [filed Dec. 31, 1996] [hereinafter "Pl.'s Resp. to Mot. to Dismiss"].) The receipts do not indicate, however, the nature of the materials sent or the sender.

Plaintiff alleges that, despite its May 5, 1993, notice, neither the EPA nor the CDPHE has commenced or prosecuted a court action to redress its grievances. (Compl. ¶ 4.) On October 9, 1996, plaintiff filed a complaint in this court for injunctive and declaratory relief under the Clean Air Act and the CAQC. (*Id.*) Defendants assert that the air-quality regulations at issue "are the subject of an ongoing state administrative rulemaking that may, in all likelihood, lead to related federal rulemaking by the EPA." (Mot. to Dismiss at 14.)

On November 27, 1996, defendants moved to strike portions of plaintiff's complaint as immaterial, impertinent, or scandalous pursuant to rule 12(f) of the Federal Rules of Civil Procedure. (Mot. to Strike Pursuant to Rule 12(f), Fed.R.Civ.P. [filed Nov. 27, 1996] [hereinafter "Mot. to Strike"].) On December 2, 1996, defendants moved to dismiss plaintiff's claims pursuant to rules 12(b)(1) and 12(b)(2) of the Federal Rules of Civil Procedure on the grounds that: (1) plaintiff lacks standing to maintain this action; (2) plaintiff failed to satisfy the statutory notice prerequisites to bringing a court action; and (3) the doctrine of primary jurisdiction counsels that the court should refrain from adjudicating plaintiff's claims in light of recent state administrative rulemaking proceedings concerning opacity and sulfur dioxide standards. (Mot. to Dismiss.) Defendants alternatively request a stay pending completion of the state rulemaking proceedings. (*Id.*)

On December 23, 1996, the Colorado Air Quality Control Committee ("AQCC") voted to modify certain opacity and sulfur dioxide limits. (Pl.'s Resp. to Mot. to Dismiss at 21; Defs.' Reply to Pl.'s Resp. in Opp'n to Defs.' Mot. to Dismiss at 7 [filed Jan. 22, 1997] [hereinafter "Def.'s Reply (Mot. to Dismiss)"].) The parties agree, however, that before the modified limits can take effect, they must be approved by (1) the Colorado General Assembly and (2) the EPA after it publishes them and solicits public comments. (Pl.'s Resp. to Mot. to Dismiss at 21; Def.'s Reply [Mot. to Dismiss] at 7.)

## ANALYSIS

### 1. *Motion to Dismiss or Stay*

#### a. *Standing*

Because "standing is an essential and unchanging part of the case-or-controversy requirement of Article III," *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992), I first address defendants' motion to dismiss or stay. Defendants argue that this action should be dismissed for lack of subject-matter jurisdiction under rule 12(b)(1) of the Federal Rules of Civil Procedure because plaintiff has no standing to bring it. The Clean Air Act provides that "any person may commence a civil action on his own behalf [ ] against any person ... who is alleged to have violated or to be in violation of (A) an emission standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such standard or limitation." 42 U.S.C.A. § 7604(a)(1) (West 1995). Defendants maintain, however, that plaintiff has not established constitutional standing to maintain this action.

In *Lujan,* the Supreme Court held that "the irreducible constitutional minimum of standing" contains the following three elements:

First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally-protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct com-

plained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant[s], and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan,* 504 U.S. at 560–61, 112 S.Ct. at 2136 (citations omitted); *accord Committee to Save the Rio Hondo v. Lucero,* 102 F.3d 445, 447 (10th Cir.1996). Plaintiff bears the burden of proving standing. *Lujan,* 504 U.S. at 561, 112 S.Ct. at 2136; *Gilbert v. Shalala,* 45 F.3d 1391, 1394 (10th Cir.1995). Because the issue of standing comes before the court on a motion to dismiss, I presume that plaintiff's general factual allegations are supported by specific facts. *See Lujan,* 504 U.S. at 561, 112 S.Ct. at 2137.

### i. Injury–In–Fact

■ In an action to enforce environmental laws, impaired aesthetic and environmental interests constitute injury-in-fact as long as the party bringing the action has itself suffered or is at risk of suffering the injury. *Sierra Club v. Morton,* 405 U.S. 727, 734, 92 S.Ct. 1361, 1366, 31 L.Ed.2d 636 (1972). In *Committee to Save the Rio Hondo,* a Clean Water Act case, the Tenth Circuit held that the plaintiff made a sufficient showing of injury-in-fact, for summary judgment purposes, by presenting evidence that its members living near the watershed at issue suffered impaired recreational and aesthetic enjoyment as well as diminished ability to irrigate. Other circuits have ruled similarly. *See, e.g., Dubois v. USDA,* 102 F.3d 1273, 1281–83 (1st Cir.1996) (concluding, in Clean Water Act case, that individual alleged injury-in-fact where he asserted that he regularly visited and engaged in recreational activities in the area at issue, and regularly drank and took samples for scientific analysis from the pond at issue); *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.,* 73 F.3d 546, 556–57 (5th Cir.) (finding, in Clean Water Act case, that Sierra Club made sufficient showing of injury-in-fact where it presented evidence that its members who regularly used bay at issue for recreational activities would derive less enjoyment from their activities if "produced water" from oil and gas facilities were discharged into the bay), *cert. denied,* —— U.S. ——, 117 S.Ct. 57, 136 L.Ed.2d 20 (1996); *Mt. Graham Red Squirrel v. Espy,* 986 F.2d 1568, 1581–82 (9th Cir.1993) (holding that Sierra Club alleged an injury-in-fact in case under Endangered Species Act where it alleged that some of its members would suffer irreparable harm if squirrel from which they derived scientific, recreational, and aesthetic enjoyment became extinct). Here, plaintiff's allegations—that defendants' actions have impaired the ability of its members who live, work, and recreate in the Yampa Valley to breathe clean air and view natural scenery and wildlife—are comparable to those in the above-referenced cases in which circuits have found injury-in-fact.

Defendants argue that plaintiff's allegations of impairment are too broad and general to establish an injury-in-fact. (Mot. to Dismiss at 3–6.) I disagree. Plaintiff alleges that its members who live, work, and recreate in the Yampa Valley are injured by defendants' emissions. At this stage of litigation, plaintiff's allegations suffice to establish an injury-in-fact. *See Lujan,* 504 U.S. at 561, 112 S.Ct. at 2137; *Morton,* 405 U.S. at 734, 92 S.Ct. at 1366; *Dubois,* 102 F.3d at 1281–83; *Committee to Save the Rio Hondo,* 102 F.3d at 450–51; *Sierra Club, Lone Star,* 73 F.3d at 556–57; *Mt. Graham Red Squirrel,* 986 F.2d 1568, 1581–82.

### ii. Causation

■ To establish causation, plaintiff must show that the injuries it alleges are "fairly traceable" to defendants' alleged actions. *Committee to Save the Rio Hondo,* 102 F.3d at 451. Plaintiff's allegations—that defendants' emissions impair its members' ability to breathe clean air and view natural scenery and wildlife—clearly satisfy this requirement. *See id.; Sierra Club, Lone Star Chapter,* 73 F.3d at 557 (holding that to establish causation "it [was] sufficient for Sierra Club to show that [defendants'] discharge of produced water *contributes* to the pollution that impairs [a Sierra Club member's] use of the bay").

### iii. Redressability

■ To satisfy the redressability requirement, plaintiff must show that a decision in its favor will likely redress its alleged injury. *Lujan,* 504 U.S. at 560–61, 112 S.Ct. at 2136; *Committee to Save the Rio Hondo,* 102 F.3d at 452. Plaintiff seeks injunctive relief forcing defendants to reduce their emissions at the Craig Station to levels which comply with applicable permits, statutes, and regulations. (Compl. at 18–19.) Because plaintiff alleges that defendants' emissions impair its members' ability to breathe clean air and view natural scenery and wildlife, it necessarily follows that a reduction in the emissions would reduce the impairments plaintiff's members allegedly suffer. As a decision favorable to plaintiff would redress its alleged injury, plaintiff has satisfied the redressability requirement. *See Lujan,* 504 U.S. at 560–61, 112 S.Ct. at 2136; *Committee to Save the Rio Hondo,* 102 F.3d at 452.

### iv. Conclusion

Because plaintiff has made sufficient showings of injury-in-fact, causation, and redressability, I deny defendants' motion to dismiss for lack of standing.

### b. Notice

### i. Legal Standard

Defendants argue that this case should be dismissed under rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that plaintiff failed to provide notice in accordance with statutory requirements. Because both parties refer to matters outside the pleadings, I treat defendants' motion, to the extent it concerns notice, as a motion for summary judgment under rule 56(c) of the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 12(b); *David v. City and County of Denver,* 101 F.3d 1344, 1352 (10th Cir.1996).

Under rule 56(c), the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see*

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Concrete Works, Inc. v. City and County of Denver,* 36 F.3d 1513, 1517 (10th Cir.1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc.,* 36 F.3d at 1518 (citing *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. at 2554). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. at 2553; Fed.R.Civ.P. 56(e). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La–Z–Boy Chair Co.,* 756 F.2d 1467, 1474 (10th Cir.1985). The factual record must be viewed in the light most favorable to the nonmoving party. *Concrete Works, Inc.,* 36 F.3d at 1518 (citing *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 [10th Cir. 1990] ).

### ii. Notice Requirements

■ No action may be commenced under the Clean Air Act "prior to 60 days after the plaintiff has given notice of the violation (i) to the Administrator, (ii) to the State in which the violation occurs, and (iii) to any alleged violator of the standard, limitation, or order." 42 U.S.C.A. § 7604(b)(1)(A) (West 1995). The regulations promulgated under the act provide that notice must be served as follows:

(a) Notice to Administrator: Service of notice given to the Administrator under this part shall be accomplished by certified mail addressed to the Administrator, Environmental Protection Agency, Washington, D.C. 20460. Where notice relates to violation of an emission standard or limitation or to violation of an order issued with respect to an emission standard or limitation, a copy of such notice shall be mailed to the Regional Administrator of the Environmental Protection Agency for the Re-

gion in which such violation is alleged to have occurred.

(b) Notice to State: Service of notice given to a State under this part regarding violation of an emission standard or limitation, or an order issued with respect to an emission standard or limitation shall be accomplished by certified mail addressed to an authorized representative of the State agency charged with responsibility for air pollution control in the State. A copy of such notice shall be mailed to the Governor of the State.

(c) Notice to alleged violator: Service of notice given to an alleged violator under this part shall be accomplished by certified mail addressed to, or by personal service upon, the owner or managing agent of the building, plant, installation, or facility alleged to be in violation of an emission standard or limitation, or an order issued with respect to an emission standard or limitation. Where the alleged violator is a corporation, a copy of such notice shall be sent by certified mail to the registered agent, if any, of such corporation in the State in which such violation is alleged to have occurred.

(d) Notice served in accordance with the provisions of this part shall be deemed given on the postmark date, if served by mail, or on the date of receipt, if personally served.

40 C.F.R. § 54.2 (1996). The regulations further provide:

(a) Failure to act. Notice regarding a failure of the Administrator to perform an act or duty which is not discretionary shall identify the provisions of the Act which requires such act or creates such duty, shall describe with reasonable specificity the action taken or not taken by the Administrator which is claimed to constitute a failure to perform such act or duty, and shall state the full name and address of the person giving the notice.

(b) Violation of standard, limitation or order. Notices to the Administrator, States, and alleged violators regarding violation of an emission standard or limitation or an order issued with respect to an emission standard or limitation, shall include suffi-

cient information to permit the recipient to identify the specific standard, limitation, or order which has allegedly been violated, the activity alleged to be in violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name and address of the person giving the notice.

40 C.F.R. § 54.3 (1996). These notice requirements are mandatory conditions precedent to a citizen suit under the Clean Air Act. *See Hallstrom v. Tillamook County,* 493 U.S. 20, 31, 110 S.Ct. 304, 311, 107 L.Ed.2d 237 (1989) (interpreting analogous notice requirements in Resource Conservation and Recovery Act); *Save Our Health Org. v. Recomp of Minn., Inc.,* 37 F.3d 1334, 1337–38 (8th Cir.1994) (applying *Hallstrom's* interpretation of Resource Conservation and Recovery Act notice requirements to Clean Air Act notice requirements).

### iii. Sufficiency of Plaintiff's Notice

Plaintiff alleges that, in its letter of May 5, 1993, it gave defendants, the EPA, and the Colorado Department of Health and Environment sufficient notice of its intent to sue. (Compl. ¶ 3.) Defendants argue that the May 5, 1993, notice was deficient because: (1) plaintiff did not attach a copy of the notice to its complaint; (2) plaintiff did not mail the notice to the EPA or the State of Colorado by certified mail; and (3) the notice failed to identify with sufficient specificity the standard, limitation, or order it alleges defendants violated and the dates on which the alleged violations occurred. (Mot. to Dismiss at 10–13.) Although plaintiff reads defendants' motion to dismiss as asserting that the May 5, 1993, notice is deficient as stale, defendants' motion does not contain such an argument. Accordingly, I do not address the issue of staleness.

▬▬ First, as plaintiff asserts, defendants have identified no statute or regulation requiring a plaintiff in a citizen suit such as this to attach a copy of the requisite notice to its complaint. As none is apparent to the court, I conclude that plaintiff's failure to attach a copy of the May 5, 1993, notice to its

complaint does not render the notice deficient. Second, although the copies of the return receipts plaintiff has submitted indicate that the EPA, the Colorado Department of Health, and the Governor of Colorado received materials from plaintiff via certified mail on May 7, 1993, and May 11, 1993, (Pl.'s Resp. to Mot. to Dismiss, Ex. A [copies of return receipts] ), the record does not conclusively establish that those materials were copies of plaintiff's May 5, 1993, notice. The May 5, 1993, letter is addressed only to defendants and does not indicate that copies were sent to the EPA, the Colorado Department of Health, or the Governor of Colorado. (Mot. to Dismiss, Ex. A [copy of notice].) Based on the date of the notice and the date of the return receipts, however, a reasonable trier of fact could conclude that plaintiff mailed copies of the notice, via certified mail, to the EPA, the Colorado Department of Health, and the Governor of Colorado without so indicating on the letter itself.

■ Regarding the contents of the May 5, 1993, notice, defendants erroneously suggest that 40 C.F.R. § 54.3(b) requires plaintiff to cite the specific standard, limitation, or order it alleges defendants violated as well as the exact dates on which the alleged violations occurred. (Mot to Dismiss at 11–13.) Contrary to defendants' suggestion, the regulation defines sufficient notice as enough information to *enable* the recipients to identify the specific standard, limitation, or order at issue and the dates on which the alleged violations occurred. 40 C.F.R. § 54.3(b); *Public Interest Research Group of New Jersey, Inc. v. Hercules, Inc.*, 50 F.3d 1239, 1248 (3rd Cir. 1995) (holding that analogous Clean Water Act notice requirement "does not require that the [plaintiff] identify every detail of a violation"); *see also California Sportfishing Protection Alliance v. City of W. Sacramento*, 905 F.Supp. 792, 799 (E.D.Cal.1995) (holding that, to satisfy analogous Clean Water Act notice requirement, "at the least plaintiff should give a range as to date that is reasonably limited"). Plaintiff's May 5, 1993, letter informed its recipients of plaintiff's belief that defendants had violated and were in violation of: (1) the standard governing opacity percentages; (2) the standard governing sulfur-dioxide emissions; (3) the standard establishing good air-pollution control practices; and (4) the standard governing the monitoring of air emissions. (Mot. to Dismiss, Ex. A [copy of notice].) From plaintiff's allegations, the recipients could determine the specific standards, limitations, and orders at issue.

■ With respect to the dates of the alleged violations, plaintiff's allegation that the violations had occurred "for at least the past five years" and continued to occur informed the recipients that plaintiff claimed defendants were and had continuously been in violation of the Clean Air Act. I therefore reject defendants' argument that plaintiff failed to sufficiently specify the dates on which the alleged violations occurred.

### iv.  Conclusion

As I have concluded that plaintiff's notice satisfied the applicable statutory and regulatory requirements, I deny defendants' motion for summary judgment insofar as it claims that plaintiff's notice was deficient.

### c.  Primary Jurisdiction

■ Defendants argue that, because the AQCC has recently engaged in rulemaking proceedings concerning the opacity standards at issue in this case, the court should either dismiss or stay this action pursuant to the doctrine of primary jurisdiction. The doctrine provides that a court must stay an action containing "some issue within the special competence of an administrative agency . . . so as to give the parties reasonable opportunity to seek an administrative ruling." *Reiter v. Cooper*, 507 U.S. 258, 268, 113 S.Ct. 1213, 1220, 122 L.Ed.2d 604 (1993); *accord Marshall v. El Paso Natural Gas Co.*, 874 F.2d 1373, 1376–77 (10th Cir.1989) ("The doctrine of primary jurisdiction provides that where the law vests in an administrative agency the power to decide a controversy or treat an issue, the courts will refrain from entertaining the case until the agency has fulfilled its statutory obligation.") (citation omitted).

Several courts have found the doctrine of primary jurisdiction inapplicable to citizen

suits under environmental laws similar to the Clean Air Act. *California Sportfishing*, 905 F.Supp. at 807 n. 21 (Clean Water Act); *Craig Lyle Ltd. Partnership v. Land O'Lakes, Inc.*, 877 F.Supp. 476, 483 (D.Minn. 1995) (Resource Conservation and Recovery Act); *Illinois Pub. Interest Research Group v. PMC Inc.*, 835 F.Supp. 1070, 1076 (N.D.Ill. 1993) (Clean Water Act); *United States v. Environmental Waste Control, Inc.*, 710 F.Supp. 1172, 1195 (N.D.Ind.1989) (Resource Conservation and Restoration Act); *see also Susquehanna Valley Alliance v. Three Mile Island Nuclear Reactor*, 619 F.2d 231, 244 (3rd Cir.1980) (rejecting argument that doctrine of exhaustion of administrative remedies is applicable to citizen-suit enforcement provision of Federal Water Pollution Control Act and reasoning that the provision "contains its own specification of the degree to which district courts must defer to administrative agencies"). *But cf. Friends of Santa Fe County v. LAC Minerals, Inc.*, 892 F.Supp. 1333, 1349–50 (D.N.M.1995) (applying doctrine to citizen suit under Clean Water Act where, to decide case, court would have to address issues already decided by New Mexico Department of Environment and within that agency's expertise). Like the majority of these courts, I find that applying the doctrine of primary jurisdiction to citizen suits would frustrate Congress's intent, as evidenced by its provisions for citizen suits, to facilitate broad enforcement of environmental-protections laws and regulations. *See Craig Lyle Ltd. Partnership*, 877 F.Supp. at 483; *Illinois Pub. Interest Research Group*, 835 F.Supp. at 1076; *see also Student Pub. Interest Research Group of New Jersey, Inc. v. Fritzsche, Dodge & Olcott, Inc.*, 579 F.Supp. 1528, 1537 (D.N.J. 1984) (suggesting that the doctrine "should be invoked sparingly where it would serve to preempt a citizen's suit [under the Federal Water Pollution Control Act]").

■ Even if the doctrine of primary jurisdiction applied to citizen suits under environmental-protection laws and regulations, defendants have not demonstrated that the factors necessary to invoke the doctrine are

present here. That I need not consider issues within the special competence of any agency to determine whether defendants have violated existing Clean Air Act and CAQC standards, limitations, or orders * indicates the inapplicability of the doctrine. *See, e.g., American Lung Ass'n of New Jersey v. Kean*, 871 F.2d 319, 328 n. 7 (3rd Cir.1989) (finding doctrine inapplicable where, *inter alia*, the expertise of the New Jersey Department of Environmental Protection did not bear on the case); *Loggerhead Turtle v. County Council of Volusia County, Florida*, 896 F.Supp. 1170, 1177 (M.D.Fla. 1995) (finding doctrine inapplicable where "[enforcement] of the Endangered Species Act [ ][did] not require the resolution of any issues by the U.S. Fish and Wildlife Service" and resolution of the case required "no invasion of the Fish and Wildlife Service's expertise"); *see also Sierra Club v. United States Dep't of Energy*, 734 F.Supp. 946, 950 (D.Colo.1990) ("[T]he doctrine does not require that every claim touching on a regulated industry be first submitted to the regulatory agency.") (citation omitted).

Defendants also assert that the court should invoke the doctrine of primary jurisdiction because they "could face conflicting orders [from] both the court and the agency" if the court granted plaintiff's request for injunctive relief (Def.'s Reply [Mot. to Dismiss] at 8–9.) Defendants assert that plaintiff asks the court to order them to replace existing particulate emission control equipment. (*Id.* at 9.) Contrary to defendants' assertion, however, plaintiff does not ask the court to order defendants to replace existing equipment; it asks the court to order defendants to: (1) comply with all applicable permits, statutes, and regulations; (2) provide plaintiff with the results of air-pollution samples they take; and (3) pay statutory penalties and plaintiff's attorney fees and costs. (Compl. at 18–19.) As defendants have failed to demonstrate the applicability of the doctrine of primary jurisdiction, I deny their motion to dismiss or stay insofar as it is based on that doctrine.

---

* As noted above, the modifications the AQCC voted to make to the AQCA will only take effect once the Colorado General Assembly and the EPA, after public notice and comment, approve them.

## 2. Motion to Strike

Rule 12(f) of the Federal Rules of Civil Procedure provides that a court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R.Civ.P. 12(f). The rule's purpose is to conserve time and resources by avoiding litigation of issues which will not affect the outcome of a case. *United States v. Smuggler–Durant Mining Corp.*, 823 F.Supp. 873, 875 (D.Colo.1993); *see also RTC v. Schonacher*, 844 F.Supp. 689, 691 (D.Kan.1994) (stating that rule 12[f]'s purpose "is to minimize delay, prejudice, and confusion by narrowing the issues for discovery and trial"). Rule 12(f) motions, however, are a generally-disfavored, drastic remedy. *See Smuggler–Durant Mining Corp.*, 823 F.Supp. at 875, 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1380, at 647 (2d ed.1990) (hereinafter "Wright & Miller"). Allegations will not be stricken as immaterial under this rule unless they have no possible bearing on the controversy. *United States v. Sea Winds of Marco, Inc.*, 893 F.Supp. 1051, 1056 (M.D.Fla.1995) (citation omitted); *Employers Ins. of Wausau v. Musick, Peeler, & Garrett*, 871 F.Supp. 381, 391 (S.D.Cal.1994); *LeDuc v. Kentucky Central Life Ins. Co.*, 814 F.Supp. 820, 830 (N.D.Cal.1992); *United States v. Shell Oil Co.*, 605 F.Supp. 1064, 1085 (D.Colo.1985). Even where the challenged allegations fall within the categories set forth in the rule, a party must usually make a showing of prejudice before the court will grant a motion to strike. *See* 5A Wright & Miller § 1382, at 690–92. Irrelevant allegations will be stricken as scandalous only if they degrade defendants' moral character, contain repulsive language, or detract from the dignity of the court. *Nault's Auto. Sales v. American Honda Motor Co.*, 148 F.R.D. 25, 30 (D.N.H.1993) (citation omitted). Relevant allegations will be stricken as scandalous only if they satisfy the above criteria *and* go into unnecessary detail. *Id.* Defendants move to strike portions of paragraphs eighteen and nineteen from plaintiff's complaint and all of paragraphs twenty through twenty-six from the complaint.

### a. Paragraph Eighteen

In paragraph eighteen of its complaint, plaintiff alleges that "[e]ach year the Craig Station emits into the air of the Yampa Valley approximately 13.2 million tons of carbon dioxide, 9,270 tons of sulfur dioxide, 22,050 tons of nitrogen oxides, and 4,500 tons of suspended particulates." (Compl. ¶ 18.) Defendants seek to strike plaintiff's reference to emissions of carbon dioxide, sulfur dioxide, and nitrogen oxides as immaterial and scandalous. (Mot. to Strike at 2, 7–9.) Because plaintiff alleges that the pollutants emitted from the Craig Station exceed the applicable opacity standards, the chemical nature of those pollutants is relevant to both the determination of whether the Craig Station has violated the standards and what remedy, if any, is appropriate. The allegations do not go into unnecessary detail and, thus, may not be stricken as scandalous. *See Nault's Auto. Sales*, 148 F.R.D. at 30. Accordingly, I will not strike any allegations from paragraph eighteen.

### b. Paragraph Nineteen

In paragraph nineteen of its complaint, plaintiff alleges that the United States Forest Service issued a report in July 1993 in which it (1) concluded that air pollutants were impairing visibility and aquatic ecosystems in the Mount Zirkel Wilderness Area and (2) suggested that the emissions from the Craig Station and the Hayden Station were the source of the problem. (Compl. ¶ 19.) Defendants seek to strike plaintiff's reference to the Mount Zirkel Wilderness Area as immaterial. (Mot. to Strike at 2–4.) Contrary to defendants' argument, however, I find the reference relevant as the Forest Service report suggests that emissions from the Craig Station, the subject of this litigation, contribute to impaired visibility in the Mount Zirkel Wilderness Area, an area where some of plaintiff's members allegedly visit and recreate.

Defendants also seek to strike the Forest Service report's reference to the Hayden Station as irrelevant and scandalous. Although Hayden Station is not the subject of this case, plaintiff previously sued its owners in this court and won on summary judg-

ment. (Mot. to Dismiss at 4 & n. 4 [citing *Sierra Club v. Public Serv. Co. of Colo.*, 894 F.Supp. 1455 (D.Colo.1995) ].) Contrary to defendants' argument, I find the Forest Service report's reference to the Hayden Station relevant because it suggests that the emissions at issue in this case come from Hayden Station as well as the Craig Station. Plaintiff does not go into unnecessary detail in its allegations about this court's prior case concerning the Hayden Station. Consequently, I will not strike the allegations as scandalous. *See Nault's Auto. Sales*, 148 F.R.D. at 30. Defendants' motion to strike references to the Mount Zirkel Wilderness Area and the Hayden Station from paragraph nineteen is denied.

#### c. *Paragraph Twenty*

■ In paragraph twenty of its complaint, plaintiff alleges that samples of snow taken from the Mount Zirkel Wilderness Area showed high levels of sulfur contamination and acidity, and that the federal Government has determined that the Craig Station and the Hayden Station are the cause of the contamination. (Compl. ¶ 20.) Defendants move to strike the paragraph as immaterial and scandalous. (Mot. to Strike at 5–6.) To be sure, this case is about air pollution, not snow contamination. Nevertheless, because pollutants emitted from the Craig Station and found in snow may be related to those found in the air surrounding the snow, I cannot conclude that plaintiff's allegations of snow contamination will have no bearing on this case. Finally, the allegations do not go into such unnecessary detail to warrant striking them as scandalous. *See Nault's Auto. Sales*, 148 F.R.D. at 30. I therefore deny defendants' motion to strike paragraph twenty.

#### d. *Paragraph Twenty-one*

■ Paragraph twenty-one of plaintiff's complaint alleges that the owners of the Hayden Station and the Craig Station commissioned a study which, in July 1996, concluded that the Craig Station contributed to visibility impairment in the Mount Zirkel Wilderness Area but did not specifically analyze visibility between the wilderness area and

the Yampa Valley or the amount of acidic deposits in the wilderness area related to the Craig Station's emissions. (Compl. ¶ 21.) Defendants argue that the paragraph should be stricken as immaterial and scandalous. (Mot. to Strike at 6–7.) Because plaintiff suggests that emissions from the Craig Station impair visibility in the Yampa Valley and between the valley and the Mount Zirkel Wilderness Area, I cannot conclude that the details of the 1996 study, including what it did and did not analyze, have no possible bearing on this case. The allegations do not go into unnecessary detail and, thus, will not be stricken as scandalous. *See Nault's Auto. Sales*, 148 F.R.D. at 30. Defendants' motion to strike paragraph twenty-one is denied.

#### e. *Paragraphs Twenty-two through Twenty-six*

■ In paragraphs twenty-two through twenty-six of its complaint, plaintiff alleges that pollutants of the type allegedly emitted from the Craig Station cause various physical impairments and damage the environment in a variety of ways. (Compl. ¶¶ 22–26.) Defendants contend that the allegations should be stricken as immaterial and scandalous. (Mot. to Strike at 7–9.) Contrary to defendants' argument, I find the allegations material as they bear on whether the purposes behind the environmental laws and regulations at issue are applicable here. I further find that the allegations do not go into unnecessary detail so as to warrant striking them as scandalous. *See Nault's Auto. Sales*, 148 F.R.D. at 30. Defendants' motion to strike paragraphs twenty-two through twenty-six is denied.

#### 3. *Conclusion*

Based on the foregoing, it is therefore

ORDERED as follows:

1. Defendants' motion to dismiss or stay is DENIED.

2. Defendants' motion to strike is DENIED.

### ORDER AND MEMORANDUM OF DECISION

This is a citizen suit under the Clean Air Act, 42 U.S.C.A. §§ 7401–7671q (West 1995

& Supp.1996), and the Colorado Air Quality Control Act, Colo.Rev.Stat. §§ 25–7–101 to 25–7–1008 (1989 & Supp.1996). The matter is now before the court on Defendants' "Motion to Reconsider a Portion of the Order and Memorandum of Decision" filed February 12, 1997. The motion regards my February 6, 1997, Order and Memorandum of Decision wherein, pursuant to rule 12(b) of the Federal Rules of Civil Procedure, I converted defendants' motion to dismiss, brought under Fed.R.Civ.P. 12(b)(6), into a motion for summary judgment to the extent it claimed that plaintiff failed to satisfy applicable notice requirements, Defendants maintain that I improperly converted the motion, and they ask that I reconsider that part of my Order and Memorandum of Decision.

Although the Federal Rules of Civil Procedure do not specifically allow for a motion for reconsideration, the court treats a motion for reconsideration filed within ten days of the entry of judgment as one to alter or amend the judgment under rule 59(e) of the Federal Rules of Civil Procedure. *Hatfield v. Board of County Comm'rs for Converse County,* 52 F.3d 858, 861 (10th Cir. 1995). A court may grant a rule 59(e) motion only under limited circumstances. Altering or amending a judgment is appropriate, for example, "to correct manifest errors of law or to present newly discovered evidence." *Benne v. International Bus. Mach.,* 87 F.3d 419, 428 (10th Cir.1996) (quoting *Committee for the First Amendment v. Campbell,* 962 F.2d 1517, 1523 [10th Cir.1992] ). It may also be appropriate to grant a motion to alter or amend a judgment "where ... the [c]ourt has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the [c]ourt by the parties, or has made an error not of reasoning but of apprehension." *United States v. Ibarra,* 920 F.2d 702, 706 n. 3 (10th Cir.1990) (quotations omitted), *vacated on other grounds,* 502 U.S. 1, 112 S.Ct. 4, 116 L.Ed.2d 1 (1991).

Rule 12(b) provides that "[i]f, on a motion [under Fed.R.Civ.P. 12(b)(6) ], matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Defendants argue, despite this language, that a court may not convert a motion to dismiss into a motion for summary judgment pursuant to rule 12(b) if the documents a moving party attaches to the motion are "authentic." (Mot. to Reconsider a Portion of the Order and Mem. of Decision at 2 [filed Feb. 12, 1997].) In support of its position, defendants rely on the Third Circuit's position that, as an exception to rule 12(b), a court considering a motion to dismiss may consider documents referenced in the complaint without converting the motion into a motion for summary judgment. *Id.* (citing *Kaufman v. Trump's Castle Funding [In re Donald J. Trump Casino Sec. Litig.—Taj Mahal Litig.],* 7 F.3d 357, 368 n. 9 [3rd Cir.1993]; *Pension Benefit Guaran. Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 [3rd Cir.1993]; and *Zucker v. Quasha,* 891 F.Supp. 1010, 1013 [D.N.J.1995], *aff'd sub nom., Zucker v. Quasha,* 82 F.3d 408 [3rd Cir.1996] ).

Defendants cite no Tenth Circuit authority recognizing a similar exception to rule 12(b) of the Federal Rules of Civil Procedure, nor is the court aware of any. Moreover, the Third Circuit rule is permissive, not mandatory. *See Kaufman,* 7 F.3d at 368 n. 9 (recognizing that " 'a court *may* consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on that document' ") (quoting *Pension Benefit Guar. Corp.,* 998 F.2d at 1196) (emphasis supplied). The cases defendants cite hold that a court may exercise its discretion to consider documents attached to a motion to dismiss; they do not hold, as defendants suggest, that a court is obliged to do so. *Id.; Pension Benefit Guaran. Corp.,* 998 F.2d at 1196; *Zucker,* 891 F.Supp. at 1013. For these reasons, I refuse defendants' reconsideration request.

Based on the foregoing, it is

ORDERED that defendants' motion for reconsideration is DENIED.