**Manuel ANDERSON et al., Plaintiffs,**

v.

**FARMLAND INDUSTRIES, INC., Defendant.**

No. 98–2499–JWL.

United States District Court, D. Kansas.

March 19, 1999.

Randall K. Rathbun, Charles C. Steincamp, Depew and Gillen, L.L.C., Wichita, KS, James B McMath, Samuel E Ledbetter, Hank Bates, McMath, Vehik, Drummond, Harrison & Ledbetter, Little Rock, AR, for plaintiffs.

Terry W. Schackmann, Michael F. Saunders, Barry L. Pickens, Clayton L. Barker, Spencer, Fane, Britt & Browne, Kansas City, MO, for defendant.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Plaintiffs filed suit against defendant Farmland Industries, Inc. pursuant to the citizen-suit provision of the Clean Air Act, see 42 U.S.C. § 7604, alleging emissions and reporting violations at Farmland's refinery in Coffeyville, Kansas.[1] Plaintiffs, a group of individuals living near the refinery, seek the imposition of monetary penalties as well as injunctive relief and attorneys' fees and costs. This matter is presently before the court on plaintiffs' motion for partial summary judgment on jurisdiction, standing and the fifth cause of action (doc. # 5) and defendant's motion to dismiss Counts V–X or, alternatively, for abstention (doc. # 14).

As set forth in more detail below, plaintiffs' motion for partial summary judgment is granted in part and denied in part and defendant's motion is denied. Specifically, plaintiffs' motion is granted with respect to the issue of subject matter jurisdiction and is denied without prejudice on the issues of standing and Count V liability. Defendant's motion is denied to the extent defendant moves for abstention, denied to the extent defendant moves to dismiss Count IX, and denied without prejudice to the extent defendant moves for summary judgment on the basis of standing.[2]

## II. Subject Matter Jurisdiction

As an initial matter, plaintiffs move for summary judgment on the issue of wheth-

---

1. Plaintiffs have also asserted several common law claims arising out of defendant's alleged conduct. These claims are not relevant to the motions presently before the court.

2. Although defendant's motion is captioned as a motion to dismiss, the parties agree that defendant's offer of matters outside the pleadings has converted the motion into one for summary judgment.

er this court has subject matter jurisdiction over plaintiffs' Clean Air Act claims. With the exception of Count IX of plaintiffs' complaint, defendant does not dispute that the court has subject matter jurisdiction over plaintiffs' claims; rather, defendant argues that the court should abstain from exercising its jurisdiction in deference to the Kansas Department of Health and Environment (KDHE) and its recent efforts to bring defendant into compliance. As set forth in more detail below, the court concludes that it has subject matter jurisdiction over plaintiffs' claims and that it will exercise its jurisdiction rather than defer to the state agency.

■ In their motion for summary judgment on the issue of subject matter jurisdiction, plaintiffs essentially seek a determination that their suit is not barred by either of the express provisions in the statute concerning the commencement of a citizen suit. A citizen's suit under the Clean Air Act is barred if the plaintiff has failed to provide adequate notice of the violation at least sixty days prior to filing suit, see 42 U.S.C. § 7604(b)(1)(A),[3] or if the state "has commenced and is diligently prosecuting" an action in a federal or state court under the statute to clean up the site. See id. § 7604(b)(1)(B).

■ The court first addresses whether plaintiffs' notice to defendant was sufficient under § 7604(b)(1)(A). In that regard, defendant argues that plaintiffs' notice was deficient only with respect to the allegations contained in Count IX of plaintiffs' complaint. In Count IX, plaintiffs allege that defendant violated K.A.R. §§ 28–19–210(c)(3)(D) and 28–19–202 by failing to include in its annual air emission inventory reports emissions that occurred during periods of startup, shutdown and malfunction. Plaintiffs further allege that

defendant's purported underreporting of emissions caused defendant to underpay the amount of emissions fees it owed to the KDHE. Plaintiffs sent a Notice Letter to the appropriate parties on July 16, 1998.[4] In their notice, plaintiffs stated that defendant "in both its annual air emissions inventory required by K.A.R. § 28–19–210(c)(3)(D) and its annual emissions fee required by § 28–19–202 ... failed to report and to account for emissions that occurred during periods of startup, shutdown or malfunction." Plaintiffs failed to identify, in both their Notice Letter and Count IX of their complaint, which substances defendant allegedly underreported. It is this deficiency, that, according to defendant, renders the notice invalid. As set forth below, the court disagrees. Plaintiffs' notice is sufficient to satisfy the jurisdictional requirements of the statute and, accordingly, defendant's motion to dismiss Count IX is denied.

The regulations implementing the Clean Air Act give some guidance with respect to whether a plaintiff's notice is adequate for purposes of § 7604(b)(1)(A). See 40 C.F.R. § 54.3(b). According to the regulations, a notice regarding the violation of an emission standard or limitation or an order issued with respect to an emission standard or limitation:

> shall include sufficient information to permit the recipient to identify the specific standard, limitation or order which has allegedly been violated, the activity alleged to be in violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name and address of the person giving the notice.

1334, 1337–38 (8th Cir.1994) (applying Hallstrom to Clean Air Act notice requirement).

---

3. The notice requirement is a mandatory condition precedent to a citizen suit under the Clean Air Act. See Hallstrom v. Tillamook County, 493 U.S. 20, 31, 110 S.Ct. 304, 107 L.Ed.2d 237 (1989) (interpreting analogous notice requirements under RCRA); Save Our Health Org. v. Recomp of Minn., Inc., 37 F.3d

4. Plaintiffs filed their complaint on November 2, 1998.

*Id.* In essence, the purpose of the notice requirement is to give the alleged violator an opportunity to bring itself into compliance with the Act and, thus, render unnecessary the citizen suit. *See Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.,* 484 U.S. 49, 60, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987) (explaining purpose of analogous notice requirement under the Clean Water Act); *accord Atlantic States Legal Foundation, Inc. v. Stroh Die Casting Co.,* 116 F.3d 814, 819 (7th Cir.1997) ("In practical terms, the notice must be sufficiently specific to inform the alleged violator about what it is doing wrong, so that it will know what corrective actions will avert a lawsuit.") (Clean Water Act).

Turning to plaintiffs' notice here, defendant essentially argues that nothing less than a specific identification of the alleged underreported substance would have sufficed. In *Atlantic States Legal Foundation,* the Seventh Circuit rejected a similar argument under the Clean Water Act. *See* 116 F.3d at 819. There, the defendant contended that notice under the Clean Water Act "must specifically identify the point source from which the allegedly offending discharge is emerging before the Act's jurisdictional requirement will be met." *See id.* The Seventh Circuit emphasized that "the key to notice is to give the accused company the opportunity to correct the problem" and concluded that plaintiff's notice sufficiently informed the defendant of plaintiff's claim. *See id.* at 820.

Here, plaintiffs' notice clearly informed defendant about plaintiffs' claim that defendant's alleged failure to report emissions occurring during periods of startup, shutdown or malfunction did not comply with applicable regulations.[5] Plaintiffs ad-

vised defendant of the specific standard alleged to have been violated (*i.e.,* K.A.R. §§ 28–19–210(c)(3)(D) and 28–19–202), the activity alleged to constitute a violation (*i.e.,* defendant's purported failure to report emissions occurring during periods of startup, shutdown or malfunction), and the dates of the alleged violation. While providing defendant with more detailed information about the particular pollutants that were allegedly underreported may have been helpful, such detail is not required by the regulations. *See Public Interest Research Group, Inc. v. Hercules, Inc.,* 50 F.3d 1239, 1247 (3d Cir.1995) ("The regulation does not requires that the citizen identify every detail of a violation.") (Clean Water Act). Accordingly, the court concludes that plaintiffs' notice with respect to the allegations in Count IX was sufficient to advise defendant of the alleged violation and to provide defendant an opportunity to correct any problem in its reporting process.[6]

The court now turns to address whether any action by the state bars plaintiffs' suit under § 7604(b)(1)(B). It is undisputed that the state has not commenced any formal action against defendant in federal or state court. At the time plaintiffs' filed suit, however, the Kansas Department of Health and Environment (KDHE) had already taken certain administrative actions in an effort to bring defendant into compliance with the Clean Air Act. While defendant does not suggest that these actions are sufficient to constitute a bar to plaintiffs' suit, it does urge that the actions by the KDHE are sufficient such that the court should abstain from exercising its jurisdiction in deference to those proceed-

---

5. According to plaintiffs, the essence of plaintiff's claim in Count IX is that defendant's process of calculating emissions is systemically flawed such that the reporting of all substances is improper. In other words, the allegations in Count IX relate to all substances reported by defendant on its annual air emissions reports.

6. In fact, plaintiffs perhaps provided defendant with more information than required under the applicable regulation. The regulation requires that a citizen include sufficient information "to permit the recipient to identify" the components of an alleged violation. Here, plaintiffs themselves identified, *inter alia,* the specific standard alleged to have been violated and the activity alleged to constitute a violation.

ings under the doctrine of primary jurisdiction.

Before addressing the propriety of abstention, the court notes that it has a "virtually unflagging obligation" to exercise jurisdiction given it. *See Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 716, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (quoting *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 821, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)). Indeed, the Supreme Court has cautioned that abstention from the exercise of federal jurisdiction is the exception rather than the rule:

> The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest.

*Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 14, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (quoting *Colorado River,* 424 U.S. at 813, 96 S.Ct. 1236).

■ Bearing these principles in mind, the court turns to address whether an application of the primary jurisdiction doctrine is appropriate here. The doctrine provides that a court must stay an action containing "some issue within the special competence of an administrative agency . . . so as to give the parties reasonable opportunity to seek an administrative ruling." *Reiter v. Cooper,* 507 U.S. 258, 268, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993); *accord Marshall v. El Paso Natural Gas Co.,* 874 F.2d 1373, 1376–77 (10th Cir.1989) ("The doctrine of primary jurisdiction provides that where the law vests in an administrative agency the power to decide a controversy or treat an issue, the courts' will refrain from entertaining the case un-

til the agency has fulfilled its statutory obligation.")

■ The Tenth Circuit has not had an opportunity to address whether the doctrine of primary jurisdiction applies to citizen suits under the Clean Air Act or any other analogous environmental law. Several other federal courts, however, have directly addressed this issue and have found the doctrine of primary jurisdiction inapplicable to citizen suits under both the Clean Air Act and analogous environmental laws. *See, e.g., PMC, Inc. v. Sherwin–Williams Co.,* 151 F.3d 610, 619 (7th Cir. 1998) (refusing to apply doctrine to action filed under Resource Conservation and Recovery Act (RCRA)), *cert. denied,* —— U.S. ——, 119 S.Ct. 871, 142 L.Ed.2d 772 (1999); *Sierra Club v. Tri–State Generation & Transmission Ass'n,* 173 F.R.D. 275, 283–84 (D.Colo.1997) (refusing to apply doctrine to action filed under Clean Air Act and collecting cases). *But see Davies v. National Coop. Refinery Ass'n,* 963 F.Supp. 990 (D.Kan.1997) (applying doctrine to action filed under RCRA). The court looks to these cases for guidance.

In *Sherwin–Williams,* the plaintiff, PMC, bought from the defendant, Sherwin–Williams, a plant on the south side of Chicago in which Sherwin–Williams had been manufacturing paints, insecticides, and other chemicals for nearly a century. 151 F.3d at 613. In 1992, Illinois' environmental protection agency required PMC to begin cleaning up toxic waste discovered at the site. *Id.* PMC also faced the prospect of future costs in an unknown amount to comply fully with the agency's demands. *Id.* PMC sued Sherwin–Williams under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA) for recovery of past and futures costs and under RCRA for injunctive relief directing Sherwin–Williams to assume full responsibility for cleaning up the site. *Id.* After a bench trial, the district court awarded PMC essentially all the relief for which it had asked. *Id.*

On appeal, Sherwin–Williams argued, *inter alia*, that the district court should have abstained—at least with respect to PMC's claims under RCRA—because Illinois had already taken certain administrative actions to bring about PMC's compliance with RCRA. *Id.* at 618–19. Rejecting this argument, Judge Posner concluded that abstention "would be an end run around RCRA." *Id.* at 619. Judge Posner continued:

> Congress has *specified* the conditions under which the pendency of other proceedings bars suit under RCRA and, as we have just seen, those conditions have not been satisfied here. Bearing in mind that the statute has reference only to formal proceedings in federal or state court, there may be room for applying the doctrines of abstention or primary jurisdiction (different labels for the same thing, in this context) in cases in which a state has a formal administrative proceeding in progress that the citizens' suit would disrupt, as in *Coalition for Health Concern v. LWD, Inc.*, 60 F.3d 1188 (6th Cir.1995)—especially since the plaintiff there was challenging the lawfulness of the state regulatory scheme. There is nothing like that here. The state proceedings (if they can even be called that) are informal, as we have said, and the citizens' suit merely concerns the allocation of cleanup responsibilities among responsible parties.

*Id.* (emphasis in original) (citation omitted).

The court finds the reasoning of *Sherwin–Williams* persuasive. Like RCRA, the Clean Air Act expressly provides the conditions under which a citizen suit is barred. As discussed above, those conditions do not apply here. While defendant has entered into a consent agreement with the KDHE and is currently engaged in the Title V permit application process, there is no evidence in the record before the court that this citizens' suit would disrupt those efforts. Significantly, the essence of plaintiffs' request for injunctive relief is to pre-clude defendant from violating the Clean Air Act and the regulations implementing the Act. Plaintiffs do not request the court's assistance in developing compliance schedules, emissions standards or any other remedial measure that might potentially conflict with the efforts of the KDHE to bring defendant into compliance. For these reasons, the court is simply not persuaded that abstention is the appropriate approach here. *See also Sierra Club*, 173 F.R.D. at 284 (refusing to apply doctrine of primary jurisdiction to citizen suit under Clean Air Act because to do so "would frustrate Congress's intent, as evidenced by its provisions for citizen suits, to facilitate broad enforcement of environmental-protections laws and regulations.").

Even if the court were inclined to apply the doctrine of primary jurisdiction to a citizen suit under the Clean Air Act, defendant has not demonstrated that any of the factors necessary to invoke the doctrine are present here. *See Davies*, 963 F.Supp. at 997–98 (identifying factors courts consider in analyzing applicability of primary jurisdiction). Defendant contends that "plaintiffs are asking the court to decide issues not within the conventional experience of judges." The court disagrees. A determination of whether defendant is violating Clean Air Act standards is certainly not within the "special expertise" of the KDHE. *See Sierra Club*, 173 F.R.D. at 284 ("That I need not consider issues within the special competence of any agency to determine whether defendants have violated existing Clean Air Act ... standards, limitations or orders indicates the inapplicability of the doctrine."). Along those same lines, plaintiffs here have not requested any relief requiring scientific or technical expertise. As set forth above, plaintiffs essentially are seeking an order precluding defendant from violating the Clean Air Act and its regulations. They have not asked the court to develop a compliance schedule or to require defendant to undertake any specific remedial measures. For these reasons, while it

may be true that, as defendant argues, "this court cannot fashion any injunction for corrective activity at the site without duplicating or conflicting with outstanding consent decrees and orders," the court has not been asked to fashion such an injunction. Thus, any concern about duplicative efforts or conflicting orders is simply not present here.

In sum, the court concludes that plaintiffs have provided defendant adequate § 7604(b)(1)(A) notice of the allegations in Count IX of their complaint, that subject matter jurisdiction is otherwise proper, and that the court will not defer its jurisdiction to the state administrative proceedings. Plaintiffs' motion for partial summary judgment is granted on the issue of subject matter jurisdiction; · defendant's motion is denied to the extent defendant moves to dismiss Count IX and denied to the extent defendant moves for abstention.

## III. Standing

Both parties have moved for summary judgment on the issue of whether plaintiffs have standing to bring this action. According to plaintiffs, the uncontroverted facts demonstrate that plaintiffs have suffered injuries-in-fact; plaintiffs' injuries are fairly traceable to defendant's conduct; and plaintiffs' injuries are redressable through injunctive relief by this court. Defendant moves for summary judgment based only on the redressability aspect of plaintiffs' injuries. According to defendant, the uncontroverted facts demonstrate that plaintiffs' injuries are not re-

dressable because any and all violations of the Clean Air Act have been corrected.[7] Thus, for purposes of analyzing plaintiffs' standing, the parties dispute only whether plaintiffs' injuries are redressable.

As set forth in more detail below, the record before the court is inadequate to permit a definitive ruling on the issue. It is clear that some discovery must be had and that such discovery must be focused only on whether plaintiffs' injuries were redressable at the time they filed suit. In that regard, plaintiffs must be able to come forward with specific facts demonstrating—for each alleged violation in their complaint—either that defendant was in fact in violation of the Clean Air Act at the time plaintiffs filed suit or that future violations were imminent at that time.[8] If the uncontroverted facts at that point demonstrate that any of the alleged violations ceased prior to the filing of plaintiffs' complaint and that future violations were not imminent at the time of filing, summary judgment in favor of defendant with respect to those particular alleged violations may well be appropriate. To the extent the facts demonstrate that any of the alleged violations were continuing at the time plaintiffs filed suit or that future violations were imminent at the time of filing, summary judgment in favor of defendant with respect to those particular alleged violations would be inappropriate. That would not necessarily be the end of the inquiry, however. As described below, if defendant is able to show at some future date that any of the alleged violations has ceased and that there is no reasonable

7. As set forth below in the text of the court's opinion, to the extent defendant argues that summary judgment is appropriate because the alleged violations have been corrected since the filing of plaintiffs' complaint, defendant misses the mark. Its argument does not take into account the presumption of future injury that may exist when a defendant ceases the complained-of activity after suit is filed. See Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 118 S.Ct. 1003, 1019–20, 140 L.Ed.2d 210 (1998). Moreover, to the extent defendant argues that summary judgment is appropriate because the alleged viola-

tions had been corrected at the time plaintiffs filed their complaint, plaintiffs' injuries may still be redressable if future violations were imminent at that time. See id. at 1019.

8. At a minimum, plaintiffs must set forth sufficient facts from which a reasonable factfinder could conclude that defendant was in fact in violation of the Clean Air Act at the time plaintiffs filed suit or that future violations were imminent at that time. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

expectation that the violation will recur, plaintiffs' case, at least with respect to those particular violations, may be moot.

## A. The Initial Standing Inquiry

■ The Constitution extends the "judicial Power" of the federal courts of the United States only to "Cases" and "Controversies." *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 118 S.Ct. 1003, 1016, 140 L.Ed.2d 210 (1998) (citing U.S. Const. art. III, § 2, cl. 1). Standing to sue is an essential component of "what it takes to make a justiciable case." *Id.* (citing *Whitmore v. Arkansas,* 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990)). The "irreducible constitutional minimum of standing" contains three requirements: (1) the plaintiff must have suffered an actual or threatened injury-in-fact; (2) there must be a causal connection between the injury and the defendant's complained-of conduct; and (3) the injury must be redressable by the relief sought. *See id.* at 1016–17.

This triad of injury-in-fact, causation, and redressability comprises the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence. *Id.* at 1017 (citing *FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990)). Here, then, plaintiffs have the burden of establishing that they have standing to bring this action. As the Supreme Court explained in *Lujan v. Defenders of Wildlife:*

> Since [the elements of standing] are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation. At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we "presum[e] that general alle-

gations embrace those specific facts that are necessary to support the claim." In response to a summary judgment motion, however, the plaintiff can no longer rest on such "mere allegations," but must "set forth" by affidavit or other evidence "specific facts" which for purposes of the summary judgment motion will be taken to be true. And at the final stage, those facts (if controverted) must be "supported adequately by the evidence adduced at trial."

504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (citations omitted).

The Supreme Court recently addressed the redressability prong of the standing test under the citizen suit provision of the Emergency Planning and Community Right–To–Know Act of 1986 (EPCRA), 42 U.S.C. § 11046(a)(1). In *Steel Co.,* plaintiffs filed an action under the citizen-suit provision of EPCRA alleging that Steel Co. had filed certain forms late. *Id.* at 1008. In their Notice Letter prior to filing suit, plaintiffs advised Steel Co. that it had failed to submit certain forms required under EPCRA. *Id.* at 1009. Upon receiving notice, Steel Co. filed all overdue forms. *Id.* Nonetheless, plaintiffs filed suit against Steel Co. in federal court for the alleged reporting violations. *Id.*

On a challenge to the plaintiffs' standing to file suit, the Supreme Court held that plaintiffs failed to establish the "redressability" prong of the standing test because no remedies available under the EPCRA would serve to reimburse plaintiffs for their injuries. *See id.* at 1018. Specifically, the Court found that civil penalties payable to the United States Treasury were insufficient to redress plaintiffs' own injuries and that attorneys' fees and costs "cannot alone support standing." Finally, the Court held that injunctive relief aimed at deterring future misconduct was insufficient where plaintiffs had failed to allege threatened injury in their complaint. *See*

*id.* at 1018–19.[9] In other words, because plaintiff's complaint alleged wholly past violations rather than a continuing violation or the likelihood of a future violation, injunctive relief could not redress plaintiff's injury. *See id.* at 1020.

▮ Significantly, the remedies available under EPCRA are the same as those available under the Clean Air Act.[10] Moreover, the Court distinguished between violations that are corrected before the filing of a complaint and those that are corrected after the filing of a complaint. *See id.* at 1019–20 (recognizing that there may exist a presumption of future injury sufficient for purposes of Article III standing where the defendant has ceased the unlawful conduct after the filing of the complaint, but that the presumption does not apply when the unlawful conduct is corrected prior to the filing of the lawsuit).

Thus, the first issue that must be resolved is whether plaintiffs had standing at the time they filed their complaint. *See United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 397, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980) (Standing is "[t]he requisite personal interest that must exist at the commencement of the litigation."). Focusing only on the redressability prong of the standing inquiry, the Supreme Court's recent decision in *Steel Co.* instructs that plaintiffs, to survive defendant's motion for summary judgment, must come forward with specific facts from which a reasonable factfinder could conclude either that defendant was in fact violating the Clean Air Act at the time plaintiffs filed their complaint or that future violations were imminent. *See Steel Co.,* 118 S.Ct. at 1019.

In support of its motion on the issue of standing, defendant relies almost exclusively on a detailed affidavit with supporting exhibits submitted by Peter Hanley, defendant's Environmental Superintendent for the Coffeyville refinery. Because defendant's motion was filed in lieu of an answer (and, thus, prior to any discovery), plaintiffs are not able to respond adequately to defendant's motion and, in particular, are not able to refute significant portions of Mr. Hanley's testimony. Pursuant to Fed.R.Civ.P. 56(f), plaintiffs' counsel has filed an affidavit in which he requests sixty (60) days to conduct the following discovery:

1. Request documents relevant to Mr. Hanley's opinions that facility malfunctions and excess emissions will be reduced in the future and documents demonstrating Farmland's compliance record for the fourth quarter 1998 and since the suit was filed.

2. Depose Mr. Hanley and the Farmland staff who operate the affected facilities, including the Radco heater, the FCCU catalyst regenerator, the Claus sulfur recovery unit, the coal-fired boiler and the coker drums;

3. Depose the principal KDHE staff persons responsible for inspecting and monitoring CAA compliance at the Coffeyville refinery regarding Farmland's recent compliance record; and

4. Inspect the facility so that the plaintiffs' experts can make an independent determination as to whether there was a

---

9. Although the facts of the case did not support an allegation of future violations, the Court noted that "[i]f respondent had alleged a continuing violation or the imminence of a future violation, the injunctive relief requested would remedy that alleged harm." *See Steel Co.,* 118 S.Ct. at 1019.

10. Unlike EPCRA, the Clean Air Act permits a court, in its discretion, to order that up to $100,000 in civil penalties be used for "beneficial mitigation projects which are consistent with this chapter and enhance the public health or the environment." *See* 42 U.S.C. § 7604(g)(2). Plaintiff argues that this relief is sufficient for purposes of Article III standing. The court disagrees. As an initial matter, plaintiffs have not requested this relief in their complaint. In any event, such relief would not remedy the injuries suffered and, accordingly, is insufficient to establish standing. *See Steel Co.,* 118 S.Ct. at 1018–19.

reasonable likelihood of future violation at the time the plaintiffs filed suit.

Defendant has not addressed plaintiffs' request for discovery. In the absence of any input from defendant on this issue, the court concludes that plaintiff is entitled to conduct the discovery set forth above.[11] This discovery shall be completed on or before May 21, 1999 and all other discovery is stayed until such time as the court issues a determination on the standing issue.

## B. The Doctrine of Mootness

■ The court has focused its order thus far on the limited issue of whether plaintiffs had standing at the time they filed their suit and, certainly, this threshold inquiry needs resolution. That is not to say, however, that the "requisite personal interest" need only exist at the time plaintiffs filed their suit. To qualify as a case fit for federal-court adjudication, "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 117 S.Ct. 1055, 1068, 137 L.Ed.2d 170 (1997) (citations omitted); *accord Geraghty*, 445 U.S. at 397, 100 S.Ct. 1202; *Horstkoetter v. Department of Public Safety*, 159 F.3d 1265, 1276 (10th Cir.1998). This principle is commonly referred to as mootness—a doctrine which prevents "the maintenance of suit when 'there is no reasonable expectation that the wrong will be repeated.'" *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 66, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987) (quotations omitted). The mootness doctrine "protects defendants from the main-

tenance of suit ... based solely on violations wholly unconnected to any present or future wrongdoing, while it also protects plaintiffs from defendants who seek to evade sanction by predictable 'protestations of repentance and reform.'" *Id.* (quoting *United States v. Oregon State Medical Society*, 343 U.S. 326, 333, 72 S.Ct. 690, 96 L.Ed. 978 (1952)).

Thus, if plaintiffs survive summary judgment on the issue of standing, defendant may still be entitled to some relief at a future date if any of plaintiffs' particular claims become moot. Of course, a claim will not necessarily be rendered moot simply because defendant has voluntarily ceased the alleged violation at some point after plaintiffs filed their complaint. *See Steel Co.*, 118 S.Ct. at 1019–20; *United States v. W.T. Grant Co.*, 345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed. 1303 (1953).[12] Rather, a claim will be rendered moot only if defendant can demonstrate that the alleged violation has ceased and that "there is no reasonable expectation that the wrong will be repeated." *W.T. Grant*, 345 U.S. at 633, 73 S.Ct. 894 (citation omitted). This burden is a heavy one. *Id.; accord Gwaltney*, 484 U.S. at 66–67, 108 S.Ct. 376 (In seeking to have a case dismissed as moot, "the defendant must demonstrate that it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" (quoting *United States v. Phosphate Export Ass'n, Inc.*, 393 U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968))); *City of Albuquerque v. Browner*, 97 F.3d 415, 420 (10th Cir.1996), *cert. denied*, —— U.S. ——, 118 S.Ct. 410, 139 L.Ed.2d 314 (1997).

---

11. If it becomes apparent that additional discovery, focused on the limited issue of whether plaintiffs had standing at the time they filed their complaint, is needed by either party, or if the discovery ordered herein is somehow objectionable to defendant, then the court can address those issues to the extent the parties are unable to come to an agreement.

12. Moreover, the court's power to grant injunctive relief "survives discontinuance of the

illegal conduct," but the moving party must satisfy the court that relief is needed because of "some cognizable danger of recurrent violation." *W.T. Grant*, 345 U.S. at 633, 73 S.Ct. 894; *see also Steel Co.*, 118 S.Ct. at 1020 (the presumption of future injury may be applied to refute the assertion of mootness by a defendant who has ceased the complained-of activity after the filing of the complaint).

In sum, if defendant can demonstrate that any of the alleged violations has ceased after plaintiffs filed their complaint and that there is no reasonable expectation that the violation will be repeated, those claims would be rendered moot.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiffs' motion for partial summary judgment on jurisdiction, standing and the fifth cause of action (doc. #5) is **granted in part and denied in part** and defendant's motion to dismiss Counts V–X or, alternatively, for abstention (doc. #14) is **denied.**

Specifically, plaintiffs' motion is **granted** with respect to the issue of subject matter jurisdiction, and is **denied without prejudice** on the issues of standing and Count V liability. Defendant's motion is **denied** to the extent defendant moves for abstention, **denied** to the extent defendant moves to dismiss Count IX, and **denied without prejudice** on the issue of standing.

**IT IS FURTHER ORDERED BY THE COURT THAT** discovery on the limited issue of plaintiffs' standing (as set forth in detail in the court's order) **shall be completed on or before May 21, 1999** and all other discovery is **stayed** until such time as the court issues a determination on the standing issue. **Any renewed motions for summary judgment on the issue of standing shall be filed no later than June 7, 1999.**

**IT IS SO ORDERED.**