Andre WILLIAMS, et al., Plaintiffs,

v.

ALABAMA DEP'T OF TRANSP. et al., Defendants.

Civil Action No.00–D–1077–N.

United States District Court, M.D. Alabama, Northern Division.

Oct. 18, 2000.

G. Keith Clark, Clark & Nelms, Montgomery, Lloyd W. Gathings, II, Gathings, Kennedy & Associates, Montgomery, AL, Mark Kennedy, Gathings, Kennedy & Associates, Montgomery, AL, Misha Y. Mullins, Gathings, Kennedy & Associates, Montgomery, AL, for plaintiffs.

Peter S. Fruin, Maynard, Cooper & Gale, P.C., Montgomery, AL, Jim R. Ippolito, Jr., Alabama Department of Transportation, Legal Division, Montgomery, AL, Catherine Wolter Main, Maynard, Cooper & Gale, P.C., Montgomery, AL, Jarred O. Taylor, II, Maynard, Cooper & Gale, P.C., Birmingham, AL, H. Thomas Wells, Jr., Maynard, Cooper & Gale, P.C., Birmingham, AL, Gilda Branch Williams, Alabama Department of Transportation, Legal Division, Montgomery, AL, for defendants.

### MEMORANDUM OPINION
### AND ORDER

DE MENT, District Judge.

Before the court are two motions to dismiss, filed by both Defendants sepa-

rately on September 12, 2000. Plaintiffs responded on September 27, 2000. After careful consideration of the arguments of the parties, relevant law, and the record as a whole, the court finds that the motions are due to be granted in part and denied in part.

## I. JURISDICTION AND VENUE

This court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 42 U.S.C. § 6972 (Resource Conservation and Recovery Act of 1976). Neither party contests personal jurisdiction or venue.

## II. STANDARD OF REVIEW

A defendant may move to dismiss a complaint if the plaintiff has failed to state a claim upon which relief may be granted. *See* FED. R. CIV. P. 12(b)(6). A motion to dismiss attacks the legal sufficiency of the complaint. Therefore, the court assumes that all factual allegations set forth in the complaint are true, *see United States v. Gaubert*, 499 U.S. 315, 327, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir.1990), and construes all factual allegations in the light most favorable to the plaintiff. *See Brower v. County of Inyo*, 489 U.S. 593, 598, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989). Generally, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *In re Johannessen*, 76 F.3d 347, 349 (11th Cir. 1996) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

## III. FACTUAL BACKGROUND

The issue presented is whether Plaintiffs can maintain a citizen suit against the Alabama Department of Transportation ("ALDOT") and its director, Mr. G.M. Roberts ("Roberts"), for actions that allegedly have contaminated some soil and an entire plume of groundwater beneath their residential subdivision. On August 8, 2000, after giving Defendants the proper notice required by statute, Plaintiffs filed suit under the citizen suit provisions of the Resource Conservation and Recovery Act of 1976 ("RCRA"). *See* 42 U.S.C. § 6972(a)(1). Plaintiffs are seeking injunctive and other relief deemed appropriate by the court.

ALDOT maintains several maintenance shops, supply yards, and research facilities in the area surrounding Plaintiffs' home. Plaintiffs allege that since at least the early 1970s, ALDOT has violated state and federal law by inappropriately disposing of tetrachloroethylene and trichloroethylene ("TCE"), two probable carcinogens that ALDOT uses to clean and degrease various materials and products. As a result, TCE has seeped into the groundwater at levels exceeding the maximum allowable standards by a magnitude of hundreds or thousands of times. Moreover, Plaintiffs allege that ALDOT's actions are increasing and ongoing.

ALDOT and Roberts state that any violations that may have occurred have ceased. They also state that they are involved in a joint investigation with the Alabama Department of Environmental Management ("ADEM"), which they assert will lead to appropriate remedial measures. However, it seems that ADEM is not moving at a rapid pace. As of September 29, 2000, its investigative file did not include or address a report conducted by ALDOT's environmental consultants earlier this summer. In addition, it is undisputed that ADEM has not presently filed any formal lawsuit or entered into any consent decree with ALDOT.

## IV. DISCUSSION

Defendants move to dismiss the complaint on the grounds that it is barred by the Eleventh Amendment. They also ask the court to invoke the doctrine of primary jurisdiction, abstain from addressing the issues raised, and leave resolution of this matter to ADEM and other state administrative agencies. Thus, the first issue the

court must address is whether sovereign immunity bars Plaintiffs' claim. If not, the court must ask whether it should abstain from addressing this matter. As explained below, the court finds that the Eleventh Amendment deprives the court of subject matter jurisdiction with respect to AL-DOT, but not Roberts. The court then turns to Roberts' abstention argument, and finds that abstention is inappropriate in this case.

### A. ALDOT's Eleventh Amendment Defense

 The court first considers Defendants' Eleventh Amendment arguments. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Notwithstanding the language of the Eleventh Amendment, sovereign immunity applies even to suits brought by a state's own citizens. *See Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Hans v. Louisiana,* 134 U.S. 1, 15–18, 10 S.Ct. 504, 33 L.Ed. 842 (1890). The Eleventh Amendment also bars suits against state agencies that act on behalf of the state and, therefore, can assert the state's immunity. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 142–46, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993).

 In this case, ALDOT is a department of the Alabama state government. *See Morgan v. Alabama,* 5 F.Supp.2d 1285, 1296 (M.D.Ala.1998) (citing ALA. CODE § 23–1–20 (1975)). Alabama has not waived its sovereign immunity. *See* ALA. CONST. art. I, § 14. Absent waiver, AL-DOT is immune from suit unless Congress has abrogated its sovereign immunity. Thus, the court must ask whether Congress: (1) has "unequivocally expresse[d] its intent to abrogate the [state's] immunity"; and (2) has "acted pursuant to a valid exercise of power." *Seminole Tribe of*

*Florida v. Florida,* 517 U.S. 44, 55, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (citations and quotations omitted). The answer to both questions is "no."

First, RCRA does not unequivocally express a congressional intent to abrogate ALDOT's Eleventh Amendment immunity. In fact, by its very terms, the statute operates within the Eleventh Amendment. It provides that

> any person may commence a civil action on his own behalf—(1)(A) against any person (including (a) the United States, and (b) any other governmental instrumentality or agency, *to the extent permitted by the eleventh amendment to the Constitution* ) ... or (B) against any person, including the United States and any other governmental instrumentality or agency, *to the extent permitted by the eleventh amendment to the Constitution.*

42 U.S.C. § 6972(a) (emphasis supplied).

 Second, Congress would not have acted pursuant to a valid exercise of power even if it had clearly intended to abrogate Eleventh Amendment immunity. Congress enacted RCRA pursuant to its Article I Commerce Clause powers. *See Rowlands v. Pointe Mouillee Shooting Club,* 959 F.Supp. 422, 426 (E.D.Mich. 1997); *United States v. Rogers,* 685 F.Supp. 201, 202 (D.Minn.1987). Prior to *Seminole Tribe,* 517 U.S. at 72–73, 116 S.Ct. 1114, the Supreme Court had held that Congress could abrogate a state's sovereign immunity by enacting legislation under the Commerce Clause, *see Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 19–20, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989) (plurality opinion), or the Fourteenth Amendment, *see Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). However, *Union Gas* has been overruled, *see Seminole Tribe,* 517 U.S. at 72–73, 116 S.Ct. 1114, and it is now well settled that Congress' Article I legislative powers cannot trump a state's Eleventh Amendment immunity. *See Kimel v. Florida Bd. of Regents,* 528 U.S. 62, 120 S.Ct. 631, 643,

145 L.Ed.2d 522 (2000); *Alden v. Maine,* 527 U.S. 706, 754, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999); *Florida Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank,* 527 U.S. 627, 636, 119 S.Ct. 2199, 144 L.Ed.2d 575 (1999). In addition, Congress cannot use the Commerce Clause to exact a constructive waiver of a state's sovereign immunity. *See College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 682–83, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999). Plaintiffs do not contend that Congress has exacted a waiver under some other relevant constitutional provision. *See, e.g., Sandoval v. Hagan,* 197 F.3d 484, 494–500 (11th Cir.1999) (discussing waiver in exchange for receiving federal monies authorized under the Spending Clause). Accordingly, Plaintiffs' complaint against ALDOT is due to be dismissed.

### B. *Roberts' Eleventh Amendment Defense*

▮ However, with respect to Roberts, the Motion is due to be granted in part and denied in part. On one hand, basic principles of equity, comity, and federalism restrain federal courts from enjoining state officials on the basis of alleged violations of state law. *See Pennhurst St. Sch. & Hosp. v. Halderman,* 465 U.S. 89, 106, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Burch v. Apalachee Community Mental Health Servs., Inc.,* 840 F.2d 797, 801 n. 8 (11th Cir.1988); *A.N.R. v. Caldwell,* 2000 WL 1279736 (M.D.Ala.2000). Thus, Roberts' motion is due to be granted to the extent that Plaintiffs seek to restrain him from violating Alabama law.

▮ On the other hand, it is clear that the Eleventh Amendment does not bar suits that seek prospective relief against state officials for continuing violations of federal law. *See Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Sandoval,* 197 F.3d at 500 (11th Cir.1999). The *Ex Parte Young* doctrine prohibits state officers from enforcing policies in violation of the Constitution or federal law

by employing a legal fiction that creates an imaginary distinction between the state and its officers, deeming the officers to act without the state's authority, and hence, without immunity protection, when they enforce state laws in derogation of federal or constitutional rights.

*Sandoval,* 197 F.3d at 500 (quoting *Summit Med. Assoc. v. Pryor,* 180 F.3d 1326, 1336–38 (11th Cir.1999)). As a general rule, *Ex Parte Young* will apply if: (1) the plaintiff seeks prospective relief; (2) the violation is ongoing and continuous; and (3) equitable relief does not implicate "special sovereignty interests," *Pryor,* 180 F.3d at 1337, such as the state's application of its criminal laws or its title to real property. *See Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 281–87, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997); *Younger v. Harris,* 401 U.S. 37, 45–46, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). In this case, the court finds that all three factors weigh in favor of allowing Plaintiffs to proceed with their suit.

▮ Plaintiffs seek an injunction for allegedly ongoing violations of federal law. (Compl.¶¶ 22–25, A–B.) Specifically, they allege that ALDOT Director Roberts has allowed ALDOT to dispose of hazardous wastes without a federal permit. *See* 42 U.S.C. § 6925(a). *Cf. Farricielli v. Holbrook,* 215 F.3d 241, 245–46 (2d Cir.2000). Defendant does not argue that Plaintiffs' claim implicates any area of special sovereign interest. Moreover, it is clear that Congress indicated that federal courts should exercise jurisdiction and award appropriate relief in any cognizable cause of action under RCRA, except in narrow situations not relevant here. *See* 42 U.S.C. § 6972(b)(1)(B). Defendant, however, contends that any alleged discharges of TCE have ceased. Thus, he argues that Plaintiffs' claim, in effect, is a suit involving the legality of past conduct rather than a suit to restrain ongoing violations of federal law. *Cf. Chartrand v. Chrysler Corp.,* 785

F.Supp. 666, 669–70 (E.D.Mich.1992) (wholly past violations of RCRA cannot be subject of citizen suits). The court is unimpressed with Defendant's argument for two reasons.

First, the argument amounts to a factual attack on jurisdiction that can be addressed only after each party has gathered evidence through the discovery process. It is not appropriately entertained during a motion to dismiss. *See Powell,* 914 F.2d at 1463. Second, even assuming that such violations have ceased, courts have found that the continued presence of illegally dumped materials constitutes a continuing violation of RCRA. *See, e.g., City of Toledo v. Beazer Materials & Serv., Inc.,* 833 F.Supp. 646, 654 (N.D.Ohio 1993); *Gache v. Town of Harrison,* 813 F.Supp. 1037, 1040–43 (S.D.N.Y.1993) (collecting cases). As one court has stated,

> The environmental harms do not stem from the act of dumping when waste materials slide off the dump truck but rather after they land and begin to seep into the ground, contaminating soil and water. So long as wastes remain in the landfill threatening to leach into the surrounding soil and water, a continuing violation may exist. . .

*Gache,* 813 F.Supp. at 1041.

At this point in this case, Plaintiffs have alleged the ongoing presence of hazardous wastes that have been and are still being improperly disposed of by Defendants. The waste has permeated the soil and the groundwater. It presents an imminent and substantial danger to the public. *Cf. Anderson v. W.R. Grace & Co.,* 628 F.Supp. 1219, 1222 (D.Mass.1986). Accepting these allegations as true—as the court must—there is no colorable reason why Plaintiffs' action should be dismissed. Therefore, the court finds that the Eleventh Amendment does not apply to the extent that Plaintiffs seek injunctive relief that would prohibit Roberts from permitting ALDOT to continue violating federal law.

## C. *Roberts' Primary Jurisdiction Defense*

Roberts, however, urges the court to invoke the doctrine of primary jurisdiction. This is a common law doctrine that empowers courts with flexible discretion to give the appropriate administrative agency the opportunity to resolve issues within its domain. *See, e.g., Reiter v. Cooper,* 507 U.S. 258, 268, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993). Roberts maintains that AL-DOT is working with ADEM to fashion an appropriate remedy, based upon the results of current tests and investigations. Thus, he argues that the court's exercise of jurisdiction threatens to disrupt ongoing agency proceedings. For reasons explained below, the court disagrees.

Given that the court has a "virtually unflagging obligation" to exercise jurisdiction, abstention is extraordinarily disfavored. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 19, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 821, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Nevertheless, the court may choose to invoke primary jurisdiction in cases "raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion." *Far East Conference v. United States,* 342 U.S. 570, 574, 72 S.Ct. 492, 96 L.Ed. 576 (1952). In some situations, as the Supreme Court has noted,

> [u]niformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure.

*Id.* at 575, 72 S.Ct. 492.

The court can consider various factors but ultimately should base its deci-

sion on the totality of the circumstances and the particular facts of the case. *See Self v. BellSouth Mobility, Inc.*, 2000 WL 1264298 at *3 (N.D.Ala.2000). It must be mindful of the fact that abstention, as a practical matter, often permanently deprives the plaintiff of his or her day in court. *See PMC, Inc. v. Sherwin-Williams Co.*, 151 F.3d 610, 619 (7th Cir. 1998) (primary jurisdiction "gives an agency the first and often the last crack at resolving issues"); Kenneth F. Hoffman, *The Doctrine of Primary Jurisdiction Misconceived: End to Common Law Environmental Protection?*, 2 FLA. ST. U.L. REV. 491, 497 (1974) (discussing cases where plaintiffs had no remedy after court invoked primary jurisdiction).

 In this case, Roberts asks the court to abstain in order to give ADEM, an Alabama state agency, the opportunity to resolve the issues raised by Plaintiffs. The weight of authority, however, indicates that federal courts should avoid deferring to state agencies for the enforcement of federal legislation. *See, e.g., County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1310 (2d Cir.1990); *Sierra Club v. United States*, 734 F.Supp. 946, 951 (D.Colo.1990). Primary jurisdiction is particularly inappropriate in situations involving a statute like RCRA, which expressly allows for citizens to bring suit in order to ensure uniform enforcement of federal environmental laws. *See Merry v. Westinghouse Elec. Corp.*, 697 F.Supp. 180, 182–83 (M.D.Pa.1988). Congress has determined that solid and hazardous waste disposal is a matter of national concern, *see* 42 U.S.C. § 6901(a)(4), and application of the primary jurisdiction doctrine, which "might well result in review by fifty different state agencies with fifty different charters," could easily lead to uneven, suboptimal enforcement. *County of Suffolk*, 907 F.2d at 1310 (declining to invoke primary jurisdiction in deference to state agency when suit involved federal law and there were no competing federal fora available).

Indeed, RCRA's provisions for citizen suits, notice, and federal jurisdiction are all part of a comprehensive scheme designed to deal consistently with a serious national problem. First, RCRA's standing provisions allow "any person" to bring suit. *See* 42 U.S.C. § 6972(a). In choosing this language and conferring standing to the fullest extent permitted by Article III, Congress sought to maximize the number of potential enforcers of environmental regulations. Second, RCRA's notice requirements allow citizens to file suit only after first notifying the Environmental Protection Agency ("EPA"), the appropriate state officials, and the potential defendant of their intent to do so. *See id.* § 6972(b). This notice requirement gives the appropriate administrative agencies the initial opportunity to enforce the relevant regulations, and it gives the potential defendant the opportunity to bring itself into compliance with the Act. Finally, Congress charged federal courts with the responsibility for hearing RCRA lawsuits. *See Fletcher v. United States*, 116 F.3d 1315, 1327 (10th Cir.1997) (interpreting 42 U.S.C. § 6972(a)); *Reservation Tel. Co-op. v. Three Affiliated Tribes of Ft. Berthold Reserv.*, 76 F.3d 181, 185–86 (8th Cir.1996) (same). This requirement squarely places upon the federal judiciary the obligation to ensure that RCRA's uniform standards for waste disposal are met.

As one commentator has noted, "[m]inimum national standards are a core component of RCRA's mandate, and the broad enforcement mechanisms embedded in the statute charge federal courts with guaranteeing those minimums. Without that oversight, state agencies act in isolation and will develop disparate standards for solid and hazardous waste disposal." Charlotte Gibson, Note, *Citizen Suits Under the Resource Conservation and Recovery Act: Plotting Abstention on a Map of Federalism*, 98 MICH. L. REV. 269, 276 (1999). The court agrees, and finds that application of primary jurisdiction in response to a RCRA citizen suit would frustrate Congress' overall legislative intent of furthering waste disposal in a comprehensive, safe, and uniform manner. *See*

Anderson v. Farmland Indus., 45 F.Supp.2d 863, 868 (D.Kan.1999); *Sierra Club v. Tri–State Generation & Transmission Ass'n*, 173 F.R.D. 275, 284 (D.Colo. 1997); *Trident Inv. Management, Inc. v. Bhambra*, 1995 WL 736940 at *2 (N.D.Ill. 1995); *Craig Lyle Ltd. Partnership v. Land O'Lakes, Inc.*, 877 F.Supp. 476, 483 (D.Minn.1995); *Coalition for Health Concern v. LWD, Inc.*, 834 F.Supp. 953, 961 (W.D.Ky.1993); *U.S.(EPA) v. Environmental Waste Control*, 710 F.Supp. 1172, 1184 (N.D.Ind.1989), *aff'd*, 917 F.2d 327 (7th Cir.1990); *Merry*, 697 F.Supp. at 183.

The court is aware that ADEM has begun investigating the potential contamination of the soil and water surrounding the residential subdivision where Plaintiffs live. However, ADEM's involvement has not yielded any formal proceeding, consent decree, or joint remedial stipulation among the parties. Its involvement has been minimal and, based on the evidence available at this point, has not been particularly diligent. *See Tanglewood E. Homeowners v. Charles–Thomas, Inc.*, 849 F.2d 1568, 1574 (5th Cir.1988). In any event, RCRA specifies that only "diligent prosecut[ion]" of a lawsuit by the EPA or a state agency bars a RCRA citizen suit. *See PMC*, 151 F.3d at 618–19 (interpreting 42 U.S.C. § 6972(a)). Given that statutory command, federal courts "may not create a separate standard as to what level of administrative investigation is sufficient to dismiss a citizen suit." Gibson, *supra* at 281.

When federal courts have ignored RCRA's statutory definition of "diligence" in favor of deference to local agencies, communities have waited years for genuine enforcement of the statute. *See, e.g., Davies v. National Co–op. Refinery Ass'n*, 963 F.Supp. 990 (D.Kan.1997). It is presumably for this reason that those few courts that have invoked primary jurisdiction have done so only when "the proceedings brought by the plaintiff were nothing more than an action requesting the federal court to review a permit decision already made by the state administrative agency," *L.E.A.D. v. Exide Corp.*, 1999 WL 124473

at *22 n. 19 (E.D.Pa.1999), or when the plaintiff was "challenging the lawfulness of the state regulatory scheme" itself. *PMC*, 151 F.3d at 619.

Roberts' focus on ADEM's actions is misplaced. There is no real risk that the exercise of jurisdiction will result in conflicting obligations for Roberts, given that state and federal environmental protection agencies operate as part of the same regulatory scheme. Absent some special waiver that is not alleged to exist, ADEM's waste disposal policies can receive EPA approval only if they are equivalent to, or more stringent than the EPA's. Put another way, ADEM may not allow ALDOT to remain in less than full compliance with the EPA's RCRA requirements. *See* 42 U.S.C. §§ 6929, 6947(a). Thus, under the terms of RCRA's federal-state structure, relief granted by a federal court cannot create any conflict, for federal authority ultimately defines Defendant's statutory obligations. *See Boyes v. Shell Oil Prods. Co.*, 199 F.3d 1260, 1267 (11th Cir.2000) ("RCRA sets a floor, not a ceiling, for state regulation of hazardous wastes.") (citing *Old Bridge Chem., Inc. v. New Jersey Dep't of Envt'l Protection*, 965 F.2d 1287, 1296 (3d Cir.1992)).

Finally, primary jurisdiction is not justified by Defendant's contention that an analysis of Plaintiffs' claims requires special expertise or technical experience that lies beyond the court's grasp. Plaintiffs are requesting an injunction prohibiting Defendants from violating RCRA and requiring them to take remedial action. A determination of whether Defendants are complying with federal law is not an issue within the ADEM's unique domain. *See Anderson*, 45 F.Supp.2d at 868 (quoting *Sierra Club*, 173 F.R.D. at 284). Similarly, the court is well-equipped to analyze the extent to which specific remedial measures might be necessary. *See Wilson v. Amoco Corp.*, 989 F.Supp. 1159, 1170 (D.Wyo.1998) (RCRA issues are not too "esoteric or complex" for judicial evaluation); *see also Merry*, 697 F.Supp. at 183 n. 2 ("enforcement of pollution regulations

is not a technical matter beyond the competence of the courts.") (citing S.Rep. No. 92–414 (1972), *reprinted in* 1972 U.S.C.C.A.N. 3668, 3747).

In enacting RCRA's citizen suit provisions, Congress has chosen to allocate federal judicial resources to the oversight of this nation's waste disposal problem. The court is reluctant to reallocate those resources through the use of questionable escape valves and procedural devices. Therefore, Defendant's Motion To Dismiss is due to be denied to the extent that it urges the court to invoke the doctrine of primary jurisdiction. Judgment shall be entered accordingly.

## V. ORDER

Accordingly, it is hereby CONSIDERED and ORDERED that the separate Motions To Dismiss be GRANTED in part and DENIED in part as follows:

(1) Plaintiffs' claims against ALDOT shall be and the same are hereby DISMISSED;

(2) Plaintiffs' claims against Defendant Roberts for his alleged violations of Alabama law shall be and the same are hereby DISMISSED;

(3) In all other respects, the motions shall be and the same are hereby DENIED.