**Jimmy ATWELL, Plaintiff,**

v.

**KW PLASTICS RECYCLING DIVISION, Defendant.**

**No. Civ.A. 01–A–911–N.**

United States District Court, M.D. Alabama, Northern Division.

Nov. 19, 2001.

G. Keith Clark, Montgomery, AL, for plaintiff.

Nicholas J. Cervera, Grady A. Reeves, Troy, AL, for defendant.

## MEMORANDUM OPINION

ALBRITTON, Chief Judge.

### I. INTRODUCTION

This cause is before the court on a Motion to Dismiss (doc. # 4), filed by Defendant on August 15, 2001. Plaintiff Jimmy Atwell filed his Complaint with this court on July 24, 2001. Atwell brings a citizen suit seeking a declaratory judgment, in-

junctive relief, penalties, and attorneys' fees to enforce provisions of the Clean Water Act ("CWA"), 33 U.S.C. § 1251 *et seq.*, the Alabama Water Pollution Control Act ("AWPCA"), *Code Ala.* § 22–22–1 *et seq.*, and State Indirect Discharge ("SID") permit no. IU 32 55 00076 issued by the Alabama Department of Environmental Management ("ADEM").

The Motion to Dismiss is made pursuant to Fed.R.Civ.P. 12(b)(1), alleging lack of subject matter jurisdiction. For reasons to be discussed, the Motion to Dismiss is due to be granted.

## II. STANDARD OF REVIEW

■ A Rule 12(b)(1) motion challenges the district court's subject matter jurisdiction and takes one of two forms: a "facial attack" or a "factual attack." A "facial attack" on the complaint requires the court to assess whether the plaintiff has alleged a sufficient basis for subject matter jurisdiction. *See Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir.1990); *Hayden v. Blue Cross & Blue Shield of Alabama*, 855 F.Supp. 344, 347 (M.D.Ala. 1994). A "factual attack," on the other hand, challenges the existence of subject matter jurisdiction based on matters outside the pleadings. *See Lawrence*, 919 F.2d at 1529. Under a factual attack, the court may weigh conflicting evidence and decide the factual issues that determine jurisdiction. *See Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir.

1991). The burden of proof on a Rule 12(b)(1) motion is on the party averring jurisdiction. *See Thomson v. Gaskill*, 315 U.S. 442, 446, 62 S.Ct. 673, 86 L.Ed. 951 (1942).

## III. FACTS

This case is a companion to CV 00–A–1668–N ("*Atwell I* "), filed on December 6, 2000. In *Atwell I*, the Plaintiff alleged that Defendant KW Plastics Recycling Division ("KW"), an Alabama Partnership, discharged a number of pollutants that caused the Troy, Alabama Waste Water Treatment Plant ("the Plant") to violate its National Pollutant Discharge Elimination System ("NPDES"), which in turn violated KW's State Indirect Discharge ("SID") permit. In this case, Atwell alleges a number of instances where KW failed to report the sampling and testing of its effluent to the Alabama Department of Environmental Management ("ADEM"), in violation of its SID permit and ADEM Admin.Code R. 335–6–5–.15(12)(e)(3).[1]

On August 15, 2000, Atwell sent a "60–day notice letter" to KW.[2] In this letter, Atwell informed KW that he intended to file suit for violations of several of its SID permit provisions "from at least March 31, 1997, to the present." The letter enumerated five permit provisions addressing the discharge of pollutants.[3] As previously noted, Atwell filed his first suit on December 6, 2000.

---

**1.** ADEM Admin.Code R. 335–6–5–.15(12)(e)(3) states: "If the permittee monitors any pollutant more frequently than required by the permit, using test procedures approved under 40 CFR Part 136 (1994) or as specified in the permit, the results of this monitoring shall be included in the calculation and reporting of the data submitted in the [discharge monitoring report]."

**2.** A citizen suit under the CWA cannot be brought "prior to sixty days after the plaintiff has given notice of the alleged violation (i) to

the Administrator, (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation, or order...." 33 U.S.C. § 1365(b)(1)(A).

**3.** The letter also listed several pollutants as possible causes of interference at the Plant, including: zinc, chloroform, mercury, nickel, copper, lead, cyanide, Di-n-butylphthalate, Dielhylphthalate, Dimethylphthalate, "Naconol 90G," "Solen 3210," "Solen 2070," and "Solen 1015," as well as "any other like pollutants."

At some point after the *Atwell I* complaint was filed, Atwell reviewed the files maintained by ADEM pertaining to KW. He discovered a report prepared by an engineering firm, Dames & Moore, that suggested KW had sampled and tested its waste stream without reporting the results to ADEM. The report did not indicate exactly when the sampling had taken place. Apparently, the sampling and testing at issue was part of an effort by KW to characterize its waste stream in order to select an appropriate means of upgrading its pre-treatment system.

Based on this information, Atwell sent KW a second 60-day notice letter on March 16, 2001, with copies to the Administrator and the state. The notice indicated that Atwell intended to sue KW for violations of its SID permit's reporting requirements.[4] Atwell admits that he did not identify specific reporting violations in the March 16, 2001 letter because he did not have sufficient information at the time. In connection with the second notice, Atwell moved for an extension of the deadline to amend the pleadings in *Atwell I*. The court granted Atwell's motion and extended the deadline to March 31, 2001.

In the meantime, Atwell served KW with a request for production of documents on March 12, 2001. This request specifically asked for the results of the sampling and testing referenced in the Dames & Moore report. KW apparently failed to respond or object to the request within the 30 days allotted by Fed.R.Civ.P. 34(b). After several informal attempts to obtain the requested documents, Atwell filed a motion to compel on May 17, 2001. A hearing on the motion was held before the magistrate judge on May 30, 2001. During the hearing, the magistrate judge in-

formed KW that she was of the opinion that sanctions were in order. KW then produced the requested documents on May 31 and June 1, 2001, too late for Atwell to amend his complaint in *Atwell I*. Consequently, Atwell filed his complaint in this case.

## IV. *DISCUSSION*

KW moves to dismiss this action for lack of jurisdiction on two grounds, or in the alternative, to dismiss a portion of the allegations for failure to state a claim upon which relief can be granted. First, KW contends that Atwell's March 16, 2001 notice letter was insufficiently specific as to the violations or dates being alleged. Because proper notice is a jurisdictional prerequisite for citizen suits under the CWA, KW argues, failure to comply with the applicable statutory provision and regulation requires dismissal of this suit. Second, KW avers that Atwell's complaint in this case fails to allege any "ongoing violations." Since citizen suits cannot be maintained for "wholly past violations," KW contends that dismissal is warranted on this ground as well. Because these arguments challenge the subject matter jurisdiction of the court, they will be considered pursuant to the standard of review appropriate for motions under Fed.R.Civ.P. 12(b)(1). Based on its disposition of KW's motion on lack of subject matter jurisdiction grounds, the court finds it unnecessary to address that portion of KW's motion properly considered under the Fed. R.Civ.P. 12(b)(6) standard.

### A. Notice

KW argues that Atwell's March 16, 2001 notice letter did not comply with the notice

---

4. The second notice letter was identical to the August 15, 2000 letter, merely adding that Atwell intended to bring suit based on "[t]he failure to report as required by Part I, F., 1., 2., 3., and 4. of the Permit" and "[t]he failure to record and maintain monitoring or test or analytical results as required by Part I., E. of the Permit."

provision of the CWA because it was not sufficiently specific with regard to the alleged violations and the dates on which they occurred. Accordingly, KW argues, this suit should be dismissed for failure to comply with the jurisdictional prerequisite embodied in 33 U.S.C. § 1365(b).[5] Citing case law that liberally construes the notice requirement with regard to reporting violations "directly related" to previously noticed discharge violations, Atwell counters that the March 16, 2001 letter was not required. Furthermore, Atwell argues, the second letter was sufficiently specific. Finally, he avers that KW had actual notice of the alleged violations. Accordingly, Atwell contends, he should be allowed to proceed with his claim regardless of whether the statutory notice requirement has been met.

### 1. Interpretation of 40 C.F.R. § 135.3

It is axiomatic that "the starting point for interpreting a statute is the language of the statute itself." *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980). As previously noted, the citizen suit provision of the CWA provides:

> No action may be commenced ... (A) prior to sixty days after the plaintiff has given notice of the alleged violation (i) to the Administrator, (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation, or order....
>
> ...
>
> Notice under this subsection shall be given in such manner as the Administrator shall prescribe by regulation.

33 U.S.C. § 1365(b). The required contents of such notice are set forth in the Code of Federal Regulations:

> (a) *Violation of standard, limitation or order.* Notice regarding an alleged violation of an effluent standard or limitation or of an order with respect thereto, shall include sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice.

40 C.F.R. § 135.3(a) (2000).

The court notes at the outset that there is a divergence of approaches among courts that have had occasion to apply the notice provisions of environmental stat-

---

5. In *Hallstrom v. Tillamook County*, the Supreme Court held that the citizen suit notice provision of the Resource Conservation and Recovery Act, 42 U.S.C. § 6972(b)(1), is a "mandatory condition precedent" to filing a citizen suit under the statute. 493 U.S. 20, 31, 110 S.Ct. 304, 107 L.Ed.2d 237 (1989). The court expressly declined to determine whether the requirement "is jurisdictional in the strict sense of the term." *Id.* Recognizing the ambiguity this limited holding might engender, Justice Marshall noted in his dissent that:

> The Court might be read to suggest that failure to comply with the 60–day notice provision deprives the court of subject-matter jurisdiction, thereby obligating the court to dismiss a case filed in violation of the notice provision no matter when the defendant raises the issue ... [i]n any event, I do not understand the Court to express any view on whether the notice requirement is waivable.

*Id.* at 34, 110 S.Ct. 304.

Regardless of the appropriate label, the Court made it clear that failure to comply with the notice provision necessitates that a "district court ... dismiss the action as barred by the terms of the statute." *Id.* at 33, 110 S.Ct. 304. Accordingly, this court is satisfied that consideration of the issue under the standard appropriate for questions of subject matter jurisdiction is the correct way to proceed.

utes. *See, e.g.,* Robin Kundis Craig, "Notice Letters and Notice Pleading: The Federal Rules of Civil Procedure and the Sufficiency of Environmental Citizen Suit Notice," 78 *Or.L.Rev.* 105 (1999). Some courts have strictly construed the notice requirements, while others have given them a more liberal interpretation. *Id.* Accordingly, the court finds it necessary to survey briefly the competing approaches set forth in the case law before addressing the specific issues presented in this case.

Construing the citizen suit notice provision of the CWA, the Eleventh Circuit held that "the 60–day notice requirement of 33 U.S.C. § 1365(b) is a mandatory condition precedent to the filing of a citizen suit under the Clean Water Act." *National Environmental Foundation v. ABC Rail Corporation,* 926 F.2d 1096, 1097 (11th Cir. 1991) (citing *Hallstrom v. Tillamook County,* 493 U.S. 20, 110 S.Ct. 304, 107 L.Ed.2d 237 (1989)). As noted, the *Hallstrom* court determined that strict compliance with the 60–day notice requirement of the Resource Conservation and Recovery Act ("RCRA") was a "mandatory condition[ ] precedent" to a citizen suit brought under that statute. 493 U.S. at 31, 110 S.Ct. 304. In both *ABC Rail* and *Hallstrom,* the issue was whether failure to comply with the 60–day notice requirement was fatal; these cases do not speak directly to the issue of what constitutes sufficient notice under the applicable regulation. A number of courts, however, have found guidance in the *Hallstrom* court's rationale for strict interpretation of environmental statute notice requirements.[6]

Addressing the proper interpretation of the RCRA citizen suit notice provision, the

*Hallstrom* court noted that several other environmental statutes contained very similar provisions, all modeled on the notice provision of the Clean Air Act, 42 U.S.C. § 7604.[7] 493 U.S. at 23, 110 S.Ct. 304. Acknowledging the need for uniform interpretation, the Court "granted certiorari to resolve the conflict among the Courts of Appeals regarding the correct interpretation of the notice provision[s]." *Id.* at 25 and n. 2, 110 S.Ct. 304 (citing *Garcia v. Cecos Int'l, Inc.,* 761 F.2d 76 (1st Cir.1985) (construing the notice provision in RCRA as a mandatory prerequisite for suit); *Highland Park v. Train,* 519 F.2d 681 (7th Cir.1975) (construing the notice provision of the Clean Air Act as mandatory); *Proffitt v. Bristol Commissioners,* 754 F.2d 504 (3rd Cir.1985) (holding that notice provisions of RCRA and CWA were satisfied where proper parties had notice in fact of the alleged violations more than 60 days before suit was filed); *Pymatuning Water Shed Citizens for Hygienic Environment v. Eaton,* 644 F.2d 995 (3rd Cir.1981) (holding that notice provision of CWA was satisfied where district court stayed the proceedings for 60 days in order to cure the procedural default)).

Determining that the RCRA notice provision was a "mandatory, not optional, condition precedent for suit," the Court rejected a "flexible or pragmatic construction" urged by the plaintiffs. *Id.* at 26, 110 S.Ct. 304. Furthermore, the Court ruled that the notice provision was not subject to "equitable modification and cure." *Id.* at 27, 110 S.Ct. 304. Noting that "[plaintiffs] have full control over the timing of their suit," the Court reasoned that "[t]he equities do not weigh in favor of modifying statutory requirements when

---

6. *See* Craig, 78 *Or.L.Rev.* at 141 *et seq.*

7. *See, e.g.,* § 310(d)(1) of the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9659(d)(1); § 105(g)(2) of the Marine Protection, Re-

search, and Sanctuaries Act, 33 U.S.C. § 1415(g)(2); § 11(g)(2) of the Endangered Species Act, 16 U.S.C. § 1540(g)(2); § 326(d) of the Emergency Planning and Community Right–To–Know Act, 42 U.S.C. § 11046(d).

the procedural default is caused by [plaintiffs'] 'failure to take the minimal steps necessary' to preserve their claims." *Id.* at 27–28, 110 S.Ct. 304 (quoting *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 466, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975)).

The Court went on to explain that the notice provisions embody a legislative intent "to strike a balance between encouraging citizen enforcement of environmental regulations and avoiding burdening the federal courts with excessive numbers of citizen suits." *Id.* at 29, 110 S.Ct. 304. Requiring strict compliance, the Court held, serves this purpose in two important ways:

> First, notice allows Government agencies to take responsibility for enforcing environmental regulations, thus obviating the need for citizen suits. See *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 60 [108 S.Ct. 376, 98 L.Ed.2d 306] (1987) ("The bar on citizen suits when governmental enforcement action is under way suggests that the citizen suit is meant to supplement rather than to supplant governmental action"). In many cases, an agency may be able to compel compliance through administrative action, thus eliminating the need for any access to the courts. See 116 Cong.Rec. 33104 (1970) (comments of Sen. Hart). Second, notice gives the alleged violator "an opportunity to bring itself into complete compliance with the Act and thus likewise render unnecessary a citizen suit." *Gwaltney, supra,* at 60 [108 S.Ct. 376]. This policy would be frustrated if citizens could immediately bring suit without involving federal or state enforcement agencies. Giving full effect to the words of the statute preserves the compromise struck by Congress.

*Id.* While determining the legislative intent behind the notice provisions of environmental statutes was not a necessary step in the *Hallstrom* court's reasoning (the decision rested firmly on the plain language of the statute), the Court's discussion provides solid support for the strict interpretation of all aspects of environmental statute notice requirements.[8]

Atwell implicitly argues that the interpretive approach set out in *Hallstrom* should not be applied to the requirements concerning the *contents* of notice. In *Public Interest Research Group v. Hercules, Inc.*, the Third Circuit declined to read *Hallstrom* "broadly, extending the Supreme Court's interpretation of the notice and 60-day delay requirements to a ruling on the contents of a notice." 50 F.3d 1239, 1249 (3rd Cir.1995). In *Hercules*, the district court found that the plaintiffs' notice letter failed to comply with 40 C.F.R. § 135.3 because it did not identify the specific standards alleged to have been violated, the activities alleged to have constituted a violation, nor the dates of the alleged violations.[9] *Id.* at 1247. Conse-

---

8. *See also Walls v. Waste Resource Corp.*, 761 F.2d 311, 314 (6th Cir.1985) ("citizen notice provisions were intended to give EPA an opportunity to resolve issues regarding the interpretation of complex environmental standards by negotiation, unhindered by the threat of an impending private lawsuit"); *Garcia v. Cecos Int'l,* 761 F.2d 76, 82 (1st Cir.1985) ("[a]fter the complaint is filed the parties assume an adversary relationship that makes cooperation less likely").

9. The plaintiffs' notice letter included a detailed list of alleged discharge violations, as well as the following caveat:

> The attached list is based on available permit records on file at the offices of EPA Region 2 in New York City. In some instances, information was missing from the public files. We therefore expect to request information from your records to bridge these data gaps and to supplement the list of violations based on that information. However, we do not believe that it is necessary to provide you with additional notice

quently, the district court dismissed claims based on the alleged violations that had not been properly noticed. *Id.* Overruling the district court, the Third Circuit held that "[w]hile there is no doubt that such detailed information is helpful to the recipient of a notice letter in identifying the basis for the citizen suit, such specificity is not mandated by the regulation." *Id.* Quoting the language of the regulation, the *Hercules* court emphasized that " '[n]otice regarding an alleged violation ... shall include sufficient information to *permit the recipient to identify* ' the components of an alleged violation." *Id.* (emphasis in original). Accordingly, the court held, the plaintiff does not have the burden of noticing every pertinent aspect of an alleged violation in order to bring suit. *Id.*

Having thus interpreted 40 C.F.R. § 135.3, the *Hercules* court went on to hold that "[o]nce [a] discharge violation is noticed, any subsequently discovered monitoring, reporting or recordkeeping violation that is directly related to the discharge violation may be included in the citizen suit." *Id.* at 1248. The court reasoned that "in investigating one aspect of a parameter violation, such as a discharge, the other aspects of that violation, for instance monitoring, reporting and record-keeping requirements for that parameter, will of necessity come under scrutiny." *Id.* Elaborating on the meaning of "directly related," the court explained that "[i]f an excessive discharge is noticed and it is later discovered that monitoring for that parameter at that outfall on that day was also faulty, we conclude, pursuant to the language of the regulation, that sufficient notice has been given of the monitoring violation to include it in the suit." *Id.*

Atwell cites several cases in support of the proposition that "[t]he Third Circuit's analysis [in Hercules] has been approved and used by other courts." Pl. Brief at 7. In *Atlantic States Legal Foundation, Inc. v. Stroh Die Casting Co.*, the Seventh Circuit held that "[i]n practical terms, the notice must be sufficiently specific to inform the alleged violator about what it is doing wrong, so that it will know what corrective actions will avert a lawsuit." 116 F.3d 814, 819 (7th Cir.1997). In that case, notice of violations at one outfall was held to be sufficient for alleged violations at another outfall where the defendant had redirected its effluent to the second outfall.[10] In *Comfort Lake Association v. Dresel Contracting, Inc.*, the Eight Circuit cited *Hercules* for the proposition that "a citizen suit is limited to violations closely related to the violations specified in the notice of intent to sue." 138 F.3d 351, 355 (8th Cir.1998). At least one court has relied on *Hercules* for the proposition that "[w]hen post-complaint exceedances are of the same parameter as those exceedances detailed in the initial notice, the initial notice provides a permittee and the EPA with sufficient notice of the plaintiff's intent to sue and of the pollution problem." *Friends of the Earth, Inc. v. Chevron Chemical Co.*, 900 F.Supp. 67, 77 (E.D.Tex. 1995).

At least two courts, however, have taken a different approach to the sufficiency of notice question. In *Washington Trout v. McCain Foods, Inc.*, the Ninth Circuit ruled that a notice letter was deficient where it failed to include the identities, addresses, and phone numbers of the plaintiffs. 45 F.3d 1351, 1354 (9th Cir. 1995). Interpreting *Hallstrom* to require

---

concerning any supplemental violations before filing a judicial enforcement action. 50 F.3d at 1243.

**10.** The court noted that re-routing its effluent *after* receiving notice was not the action "of a company that has not received enough information for the purposes of the statutory notice provisions of the [CWA]." 116 F.3d at 820.

strict compliance with all aspects of the notice requirement, the *Washington Trout* court held that failure to provide the plaintiffs' information in the notice letter required dismissal of the suit. *Id.* Ostensibly, the interested parties could have investigated the notice letter to determine who might have brought the suit at issue, but the court implicitly refused to place such a burden on the defendant and the relevant enforcement agencies.

Relying on the strict interpretive approach in *Washington Trout,* the court in *California Sportfishing Protection Alliance v. City of West Sacramento* held that "it will not suffice to give notice of a monitoring violation [under the CWA] by giving notice of an effluent violation." 905 F.Supp. 792, 799 (E.D.Cal.1995). After a discussion of 40 C.F.R. § 135.3, *Hallstrom, Washington Trout,* and *Hercules,* the *California Sportfishing* court concluded that "[monitoring and effluent violations] are distinct and the plaintiff must give notice of each. It is not enough that the agency could conclude that the effluent violations also led to monitoring or record keeping violations." *Id.* Central to the court's rationale was that imprecise notice does not fulfill the purpose of the notice requirement, given the relatively short period allotted for a pre-litigation response. *Id.* The court explained that:

> When the notice is precise, sixty days is none too much time for an agency to resolve on a course of action and take necessary steps whether to settle the matter or bring an enforcement action. But if the notice is imprecise, and requires the agency to develop on its own what the scope of the alleged violations are, then it becomes entirely impractical for the notice provision to fulfill its purpose in such a short time period.

*Id.*

In contrast to the *Hercules* court which emphasized the "sufficient to permit the recipient to identify" language of 40 C.F.R. § 135.3, the *California Sportfishing* court underscored the fact that the regulation enumerates several specific aspects of the violation to be noticed. *Id.* The court interpreted this facet of the regulation to mean that "the recipient of the notice must understand from the notice what the citizen is alleging—not what the citizen could allege if the citizen knew more or cared about other possible transgressions." *Id.* The court also held that "the date or dates of the violation must be stated with some specificity ... at least the plaintiff should give a range as to date that is reasonably limited." *Id.* Addressing the language of the notice letter at issue, the court ruled that " '[t]he previous five years on hundreds of occasions' does not give sufficient notice of the date or dates on which the violations are alleged to have occurred." *Id.* at 800.

■ This court is satisfied that a strict interpretive approach is the proper way to address the sufficiency of notice issue under 40 C.F.R. § 135.3. As discussed in *Hallstrom,* the primary purposes of the notice requirement are the avoidance of unnecessary litigation and the appraisal of the relevant enforcement agencies. 493 U.S. at 29, 110 S.Ct. 304. While the language of the regulation clearly requires something less than a thoroughly detailed account of every possible allegation, the court finds that this does not relieve the plaintiff of the duty to provide as much information as possible. Theoretically, a plaintiff provides "sufficient information to permit the recipient to identify" the pertinent aspects of a violation whenever he gives the most general notice. A general notice letter might prompt a violator or an agency to investigate the inchoate allegations and develop the information needed for a decision on how to proceed. But given the purposes of the notice require-

ment, this cannot be what Congress and the EPA had in mind.

Citizen suit enforcement of environmental laws was intended to supplement agency enforcement. Furthermore, the notice requirement of the CWA provides a relatively short period in which an alleged violator may correct any problems and avoid a lawsuit. Allowing a plaintiff to provide minimal information in a notice letter before bringing suit would place a heavy burden on alleged violators and enforcement agencies alike, a burden inconsistent with the policy goals of the notice requirement as articulated in *Hallstrom.* Accordingly, this court interprets 40 C.F.R. § 135.3 as requiring the plaintiff to provide enough information to enable both the alleged violator and the appropriate agencies to identify the pertinent aspects of the alleged violations without undertaking an extensive investigation of their own. To hold otherwise would frustrate the legislative intent behind the notice provision.

### 2. Atwell's Notice Letters

Relying on *Hercules* and the cases that have cited it with approval, Atwell contends that "strict compliance with the requirements of 40 C.F.R. § 135.3 is not a jurisdictional prerequisite as Defendant claims." Pl. Brief at 9. This argument fails to frame the issue properly. Compliance with the regulation is unquestionably mandatory. 33 U.S.C. § 1365(b) ("Notice under this subsection *shall* be given in such manner as the Administrator shall prescribe by regulation." (emphasis added)). The question before the court is whether either of Atwell's notice letters was sufficient to meet the requirements of 40 C.F.R. § 135.3 vis a vis the reporting violations alleged in this case. The court concludes that they were not.

Atwell's first argument is that the March 16, 2001 notice letter was unnecessary because additional notice is not "required for subsequently discovered monitoring and reporting violations associated with previously noticed discharge violations." Pl. Brief at 6 (citing *Hercules,* 50 F.3d at 1245–1252). Atwell impliedly contends that the notice letter of August 15, 2000, sent prior to the filing of *Atwell I,* was sufficient notice of discharge violations "associated" with the alleged reporting violations in this case.[11] Accordingly, Atwell argues, whether the second notice letter was sufficiently specific is immaterial.

Mindful of the foregoing discussion regarding the legislative intent and policy goals behind the notice provision of the CWA, the court is skeptical about the ramifications of the Third Circuit's holding in *Hercules.* Even assuming that *Hercules* is a correct statement of the law, however, Atwell's argument fails. In *Hercules,* the court held that alleged monitoring, record keeping and reporting violations "directly related" to previously noticed discharge violations did not require additional notice. 50 F.3d at 1248. While the case does contain language that suggests a more liberal reading of the applicable regulation,[12] this court interprets "directly related" to mean just that—monitoring or reporting violations *directly connected to a particular discharge violation. Id.* For example, if a plaintiff discovered that a CWA permittee had violated its permit by discharging too much of particular pollutant on a particular day and subsequently discovered that the permittee had failed to report this discharge as required by its permit, then notice of the discharge violation might be sufficient to support an allegation in the complaint that the permittee committed a reporting violation as well.

---

**11.** KW does not contest the sufficiency of the first notice letter with regard to the discharge violations alleged in *Atwell I.*

**12.** *See* 50 F.3d at 1247.

■ This potential exception to the notice requirement is not applicable to the facts of this case. Atwell alleges in his complaint numerous reporting violations occurring between August and December 1997 (the majority occurring in August and early September), yet he does not contend that these violations are directly linked with any *particular* discharge violations. Moreover, his notice letter in *Atwell I* did not specify particular dates for the discharge violations alleged therein. Atwell merely makes the blanket assertion that the reporting violations alleged in this case "relate[ ] directly to the noticed allegations that Defendant's discharges were causing the [Plant] to violate the toxicity provisions of its NPDES permit." Pl. Brief at 7. As previously stated, the burden of proof on a Rule 12(b)(1) motion is on the party averring jurisdiction. *See Thomson v. Gaskill,* 315 U.S. 442, 446, 62 S.Ct. 673, 86 L.Ed. 951 (1942). The court finds that Atwell has failed to establish the required connection, pursuant to *Hercules,* between the reporting violations alleged in this case and any particular discharge violations previously noticed. Accordingly, it was necessary for Atwell to issue notice of the alleged reporting violations that constitute the basis of this suit.

Atwell argues that if notice was required, his letter of March 16, 2001 was sufficiently specific to comply with 40 C.F.R. § 135.3. He cites several cases in support of the proposition that the regulation does not require a plaintiff to specifically identify violations alleged in a notice letter, and that the degree of specificity which is required depends on the circumstances. Pl. Brief at 9 (citing *Hercules,* 50 F.3d at 1248; *Stroh Die Casting,* 116 F.3d at 819–20; *Defenders of Wildlife v. Bal-*lard, 73 F.Supp.2d 1094, 1097 (D.Ariz. 1999); *Anderson v. Farmland Industries, Inc.,* 45 F.Supp.2d 863, 866 (D.Kan.1999); *Sierra Club v. Tri–State Generation and Transmission,* 173 F.R.D. 275, 283 (D.Colo.1997); *Fried v. Sungard Recovery Services, Inc.,* 900 F.Supp. 758, 765 (E.D.Pa.1995)). Because the general notice of reporting violations occurred in the context of more specific allegations of discharge violations, Atwell contends, "it would be a simple matter to deduce that the alleged failure to report concerned the same metals that were alleged to have been discharged illegally." *Id.*

KW counters that notice which "generally orients the defendant as to the type of violation" is insufficient. Def. Reply at 5 (quoting *California Sportfishing,* 905 F.Supp. at 799). Furthermore, KW argues, the overwhelming majority of alleged violations in Atwell's complaint "relate to parameters that are *never* mentioned in either of Plaintiff's Notice Letters, with respect to discharge violations or otherwise." Def. Reply at 7 (emphasis in original). Finally, KW contends that the broad period of time referenced in Atwell's notice letter was insufficient to enable KW to determine when the alleged violations had occurred.

Atwell's reliance on the aforementioned cases for proposition that 40 C.F.R. § 135.3 does not require the specific identification of violations that may be alleged in a complaint is misplaced. As discussed at length in the preceding section, this court does not read *Hercules, Stroh Die Casting,* or other pertinent case law to stand for the proposition that minimal, generalized notice is sufficient as long as there is enough information for the recipient to investigate and thereby determine what the plaintiff *may* allege.[13] Insofar as

---

**13.** Indeed, even the *Hercules* court recognized that "[a] general notice letter that fails sufficiently to inform its recipients of the viola-

tions upon which a citizen intends to bring

those cases may suggest a liberal interpretation of 40 C.F.R. § 135.3, this court has determined that such an interpretive approach is at cross purposes with the legislative intent behind the notice requirement.

Likewise, *Anderson, Tri–State Generation, Fried,* and *Ballard* do not support the broad assertion that specificity is not required by the regulation. In *Anderson,* the plaintiff's notice letter "clearly informed defendant about plaintiff's claim that defendant's alleged failure to report emissions occurring during periods of startup, shutdown or malfunction did not comply with applicable regulations." *Anderson,* 45 F.Supp.2d at 866. The defendant argued that the plaintiff's failure to identify specific pollutants in the notice letter required dismissal of the complaint, but the court found that the plaintiff had provided adequate notice of the standard at issue, the allegedly offending activity, and the dates of the alleged violations. *Id.* Accordingly, the Anderson court ruled that the plaintiff had given sufficient notice under the Clean Air Act, especially given that the complaint alleged violations with respect to all of the defendant's regulated pollutants. *Id.* Similarly, the defendants in *Tri–State Generation* argued that notice was insufficient because the plaintiff failed to cite the specific standards allegedly violated. *Tri–State Generation,* 173 F.R.D. at 283. Holding that notice was sufficient, the court found that the plaintiff's particularized descriptions of the allegedly violated standards were sufficient to allow the defendants to determine which standards were at issue. *Id.*

In *Fried,* the plaintiffs alleged a violation of the Clean Air Act. 900 F.Supp. at 764. The plaintiffs' notice letter identified the allegedly offending activity, renovation of a particular building, and the National Emissions Standard for Asbestos as the

standard violated. *Id.* at 765. The defendant argued that the plaintiff's notice letter was insufficient because it failed to identify the particular standard under the National Emissions Standard for Asbestos. *Id.* The court held that the letter was sufficient, because the defendant could easily cross-reference the allegedly offending activity with the set of standards pertaining to asbestos to determine that the particular standard at issue was the one specifically addressing renovations. *Id.*

While *Anderson, Tri–State Generation,* and *Fried* recognize that the regulations do not require absolute specificity, these cases most certainly do not support the broad proposition that 40 C.F.R. § 135.3 does not "require a citizen plaintiff to specifically identify violations in his notice letter." Pl. Brief at 9. Furthermore, the *Ballard* case cited by Atwell is completely inapposite to the situation in this case. *Ballard* involved a challenge to a governmental agency's failure to act. *See* 73 F.Supp.2d at 1097. The instant case does not involve an agency's alleged failure to do something required under the law, and moreover, the regulation at issue in the instant case has a separate provision applicable to such a situation. *See* 40 C.F.R. § 135.3(b).

In accordance with the discussion in the preceding section of this memorandum opinion, the court agrees with KW's position that a general notice letter that merely informs a recipient of what a plaintiff *may* allege is patently insufficient. Atwell's notice letter of March 16, 2001 informed the recipients that he planned to sue for "[t]he failure to report as required by Part I, F., 1., 2., 3., and 4. of [KW's] Permit." As KW points out, the sections of its permit referenced by the letter contain a thoroughly detailed set of requirements pertaining to KW's

---

*suit will not conform to the Act's require-* *ment." Hercules,* 50 F.3d at 1248.

reporting obligations. *See* Exh. A to Def. Memorandum. To determine what Atwell may have alleged in a complaint would have required an extensive audit of past reports over the past four years.[14] The insufficiency of Atwell's notice is underscored by the fact that Atwell had more specific information than he provided. Atwell's discovery of the Dames & Moore report led him to believe that KW "had probably not complied with its reporting requirements." Accordingly, the court finds that Atwell failed to issue proper notice under 40 C.F.R. § 135.3.

### 3. Actual Notice

Atwell also argues that KW's "actions indicate that it had actual notice of the violations at issue." Pl. Brief at 10. The fact that KW took several months to finally produce the documents requested on March 12, 2001, Atwell contends, is a clear indication that KW understood the basis of the complaint in this case. Atwell argues that "because [KW] obstructed Plaintiff's efforts to obtain additional information on the reporting violations, . . . [KW] should not be allowed to benefit from its own misconduct and from a situation it created." Pl. Brief at 12. The court understands Atwell's argument to sound in equity, that is, KW should be estopped from arguing that the notice was insufficient because it was responsible for Atwell's inability to comply with the notice requirement. KW does not directly address this argument, preferring instead to characterize Atwell's contentions as "numerous excuses and attempts to distract the Court. . . ." Def. Reply at 11.

The court acknowledges that Atwell's equity argument has a certain amount of facial appeal. As previously noted in footnote 10 of this memorandum opinion, the *Stroh Die Casting* case contains language suggesting that actual notice will suffice where the notice letter is technically deficient. *See* 116 F.3d at 820 (re-routing its effluent *after* receiving notice was not the action "of a company that has not received enough information for the purposes of the statutory notice provisions of the [CWA]"). Furthermore, at least one court has held that "[d]ismissal of claims is not necessary where statutory notice is not given, as long as the defendant and the regulatory agencies involved had actual notice for more than sixty days." *Chesapeake Bay Foundation, Inc. v. Bethlehem Steel Corp.*, 652 F.Supp. 620, 628 (D.Md.1987); *Chesapeake Bay Foundation, Inc. v. Bethlehem Steel Corp.*, 608 F.Supp. 440, 450 (D.Md.1985) (espousing a "pragmatic approach to [the] statutory [notice] requirement").

■■ Atwell's argument fails, however, for two reasons. In *Hallstrom*, the Supreme Court explicitly held that the notice requirement is not subject to "equitable modification and cure." 493 U.S. at 27, 110 S.Ct. 304. Moreover, the Court flatly rejected a "flexible or pragmatic construction" of the notice requirement. *Id.* at 26, 110 S.Ct. 304. Atwell argues that he was aggrieved because KW withheld the information he needed in order to amend his complaint in a timely fashion, but this contention confuses the issue. Either Atwell had the information necessary to provide proper notice or he did not. If he did, which is possible given that he had identified the activity that led to the alleged

---

**14.** Although the notice letter does not provide specific dates or a limited range of dates for the alleged reporting violations, it can be inferred that the allegations refer to the same time period associated with the alleged discharge violations. KW argues that this range of dates is insufficiently specific. The court finds it unnecessary to consider this argument by itself because the broad range of dates merely compounds the vagueness of Atwell's otherwise insufficient notice.

violations (the sampling and testing associated with the Dames & Moore report), he should have included as much specific information as he had so as to provide KW with the opportunity to correct the problem or to allow the appropriate agencies to determine if action on their part was warranted. If Atwell did not have enough information, he should have waited until he did before he gave notice of his intent to sue for the violations alleged in this case. As the Supreme Court in *Hallstrom* made perfectly clear, strict compliance with the statutory notice requirement is necessary to properly effectuate the legislative intent regarding the enforcement of environmental statutes. *Id.* at 24, 110 S.Ct. 304. To equitably modify the notice provision of the CWA would constitute judicial amendment of a statutory provision that embodies Congress' careful balancing of policy goals. As the Court noted, " '[i]n the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.' " 493 U.S. at 31, 110 S.Ct. 304 (quoting *Mohasco Corp. v. Silver,* 447 U.S. 807, 826, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980)).

Furthermore, the statutory notice provision has *two* purposes—requiring the communication of notice to both the alleged violator and the appropriate enforcement agencies. 33 U.S.C. § 1365(b)(1)(A). Assuming that KW had notice in fact of the alleged violations at issue in this case, Atwell does not contend that ADEM or the EPA had such knowledge. Even the cases that provide the best support for Atwell's actual notice argument recognize the need for both the alleged violator *and* the proper agencies to have notice in fact. *See* 652 F.Supp. at 628, 608 F.Supp. at 450.

Accordingly, the court finds that Atwell's equity argument fails to relieve him of the duty to provide proper notice. Because the court finds that Atwell's notice

was deficient, KW's motion to dismiss for lack of subject matter jurisdiction is due to be granted.

### B. Ongoing Violations

 Section 1365(a)(1) of the CWA authorizes private citizens to commence a civil action for injunctive relief and the imposition of civil penalties in federal district court against any person "alleged *to be in violation* of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation. . . . " 33 U.S.C. § 1365(a)(1) (emphasis added). Focusing on the "to be in violation" language and construing the citizen suit provision in relation to the agency enforcement provision of the CWA, the Supreme Court held that "citizens, unlike the Administrator, may seek civil penalties only in a suit brought to enjoin or otherwise abate an ongoing violation." *Gwaltney v. Chesapeake Bay Foundation,* 484 U.S. 49, 59, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987). Accordingly, the Court held that the CWA does not authorize citizen suits for "wholly past violations." *Id.* at 64, 108 S.Ct. 376. The Court went on to hold that "[the citizen suit provision of the CWA] confers jurisdiction over citizen suits when the citizen-plaintiffs make a good-faith allegation of continuous or intermittent violation. . . . " *Id.*

As an additional argument in support of its motion to dismiss, KW contends that Atwell has not alleged any ongoing or continuous violations, but rather, a discrete set of reporting violations that occurred between August and December of 1997. Since a citizen plaintiff cannot sue for wholly past violations, KW argues that this court lacks subject matter jurisdiction over Atwell's claims. Atwell counters that "[r]eporting violations are ongoing until

the required information is submitted." Pl. Brief at 12.

The principal case upon which Atwell relies is *Sierra Club v. Simkins Industries, Inc.*, 847 F.2d 1109 (4th Cir.1988). In *Simkins*, the court held that the defendant was in violation of a CWA permit provision at the time the plaintiff filed suit. *Id.* at 1114. The permit at issue required the defendant to sample and test its effluent and regularly submit reports of its testing. *Id.* Additionally, the defendant was required to retain records of its monitoring activities for a minimum of three years. *Id.* At the time the plaintiff filed suit, the defendant had not submitted a complete discharge monitoring report with the required data from several months prior. *Id.* The defendant argued that this failure was due to the fact that the data had not been collected in the first place, and thus could not have been reported. *Id.* Ruling in the plaintiff's favor, the court held that "where the permit expressly establishes a continuing obligation to retain records and file complete [discharge monitoring reports], to allow such a defense to jurisdiction would effectively provide a permit holder with the opportunity to escape liability under § 1365(b) by failing at the outset to sample and to create and retain the necessary monitoring records on possibly harmful and unlawful effluent discharge levels." *Id.*

In *Anderson v. Farmland Indus.*, the court addressed the question of "whether reporting violations uncorrected by the defendant at the time that suit is filed constitute an ongoing or imminent violation of the [Clean Air Act] where the defendant had ceased violating the reporting requirements prior to suit." 70 F.Supp.2d 1218, 1227 (D.Kan.1999). Citing *Simkins*, the court held that evidence of the defendant's uncorrected reports might allow a reasonable fact finder to infer that the defen-

dant's reporting violations were ongoing at the time the suit was filed. *Id.*

In contrast, the court in *Arkansas Wildlife Federation v. Bekaert Corp.* held that "the [*Simkins*] case does support the proposition that every violation of the reporting requirements of a permit continues until a corrected [discharge monitoring report] is filed." 791 F.Supp. 769, 781 (W.D.Ark.1992). The court distinguished *Simkins* on the basis that the defendant in that case sought to escape liability by failing to collect and maintain the required data, whereas the defendant in *Bekaert* "merely incorrectly reported an effluent discharge on a [discharge monitoring report] at some point and failed to file a corrected [report]." *Id.* Cognizant of the *Bekaert* decision, the court in *Anderson* recognized "that its conclusion [was] contrary to that propounded by the [*Bekaert* court]." 70 F.Supp.2d at 1227 n. 9.

This court is persuaded that the *Bekaert* decision represents the better view, and in any event, *Simkins* and *Anderson* are factually distinguishable from this case. To reiterate, a citizen plaintiff may not bring suit under the CWA for wholly past violations. As the *Simkins* court recognized, the function of reporting requirements is to allow enforcement agencies and the public to monitor the output of permittees and assess their compliance with the substantive discharge limitations of their permits. *See* 847 F.2d at 1115 ("[The defendant] was bound by the reporting and records retention requirements of the NPDES permit that are central to adequate administration and enforcement of limits on substantive discharges under the [CWA]. Unless a permit holder monitors as required by the permit, it will be difficult if not impossible for state and federal officials charged with enforcement of the [CWA] to know whether or not a permit holder is discharging effluents in

excess of the permit's maximum levels.") If a citizen plaintiff cannot maintain a suit under the CWA for wholly past discharge violations, it follows that such suits are barred where the allegations merely include past reporting violations irrelevant to the issue of whether the defendant is currently in compliance with applicable discharge limitations. The instant case presents such a situation. Atwell merely alleges violations that occurred and apparently ended over three years ago.[15] It would be an entirely different situation where past reporting violations were alleged in support of the contention that a defendant was engaged in a pattern of non-compliance with applicable reporting requirements.

Moreover, both *Simkins* and *Anderson* are factually distinct from the present case. In those cases, the alleged reporting violations occurred relatively near the time the suit was filed. 847 F.2d at 1114 ("The [discharge monitoring report] Simkins filed in the fall of 1984 did not include sampling data for the months of July and August of 1984 ... Simkins did not file a complete [*discharge monitoring report*] until January 15, 1985, almost three months after Sierra Club filed its suit on October 31, 1984."); 70 F.Supp.2d at 1227–28 ("Farmland did not change its practice of [improper] reporting ... until after receiving notice of plaintiff's intent to file suit."). Accordingly, the reporting violations were highly relevant to whether the defendants were complying with substantive aspects of their respective permits. In sharp contrast, the reporting violations alleged by Atwell occurred over three years ago and in a fairly discrete period. *See* Complaint

at ¶ 23, 25, 27. Accordingly, the court finds that Atwell has merely alleged wholly past violations, and for this reason as well, his complaint is due to be dismissed.

## V. *CONCLUSION*

For the reasons discussed, the court concludes that the Defendant's Motion to Dismiss is due to be GRANTED. A separate Order will be entered in accordance with this Memorandum Opinion.

---

**15.** In paragraph 23(b) of the Complaint, Atwell alleges violations for "all additional unreported monitoring results that were obtained by or on behalf of Defendants at any time since July 31, 1996, for any pollutant not listed, described, or otherwise included in Part I, A of the SID permit." Atwell does not allege that KW engaged in a pattern or practice of failing to report its monitoring results. For this reason, and pursuant to the court's consideration of the notice issue, this particular allegation is due to be dismissed out of hand.